June Term,
1861.

WARDEN et al.
v.
SUP. FOND DU
LAC CO.

WARDEN and another vs. THE BOARD OF SUPERVISORS of Fond du Lac County.

Equity will not interpose to restrain the execution of a deed of land sold for taxes, on the ground that the tax proceedings were irregular or void, unless it also appears that the proceedings are *inequitable* and that it will be against conscience to let them go on.

Where it appears that the *established principle* of taxation has been violated, and that *actual injustice* will ensue, or that the tax was levied for an unauthorized purpose, equity will, in proper cases, interfere to prevent the wrong.

To be entitled to the assistance of a court of equity, a party must show that he is in danger of unjustly losing a substantial right, and that he is in no fault.

APPEAL from the Circuit Court for *Lafayette* County. The case is stated in the opinion of the court.

*J. A. Sleeper*, for appellants.

*H. S. Magoon*, for respondents.

December 30.

*By the Court*, DIXON, C. J. This is a proceeding in equity to restrain the execution of a deed of lands sold for taxes, to have the sale declared void and the certificate cancelled. The defendants made no answer, and upon the hearing in the court below the complaint was dismissed, and judgment perfected against the plaintiffs for costs. The cause comes here by appeal from that judgment. We are of opinion that the action was properly dismissed, though not for the reasons assigned by the circuit judge. Without inquiring into the correctness of the positions taken by the plaintiff's counsel, but assuming them to be correct, and that the proceedings to levy the taxes, sell the lands, and execute the proposed deed, were as irregular as he claims them to have been, it seems to us that the plaintiffs have no standing in a court of equity, and that the relief which they ask was properly denied. The taxes of which they complain are those which should, by law, have been paid in 1855. They allege in their complaint, and their counsel insists, that they were regularly assessed against the land, and put into the roll and the treasurer's warrant in that year, and that they were returned unpaid by the treasurer of the town to the treasurer of the county in conformity to law. After the return no further steps to collect them were taken, for

the reason, as the counsel supposes, that the county treasurer believed the description of the land contained in the assessment roll to be so defective that a valid sale could not be had, and therefore suspended the proceedings under the authority of section 110, chapter 15, Revised Statutes of 1849. The taxes thus regularly assessed and returned amounted to $140.81, and by the statute then in force were a lien upon the land, together with all costs, charges and interest, until paid. R. S. 1849, chap. 15, sec. 115. In 1856 the same lands, by a more full and accurate description, were doubly assessed, as for the years 1855 and 1856, and as if they had been entirely omitted in the former year, pursuant to section 24, chapter 15 above cited. The assessment of 1856 for the year 1855 amounted to $136.08. This the counsel insists was a gross and fatal error on the part of the taxing officers. He claims, in the first place, that the description in the roll of 1855 was good and sufficient, and that the county treasurer should have proceeded with the sale.— But if the description was insufficient, then, he says, the county board of supervisors should have caused it to be corrected, and the *same* taxes entered and collected upon the assessment roll of the next year as provided by section 112, chapter 15. The plaintiff paid the taxes assessed for 1856, but refused to pay those assessed for 1855, and the lands were returned and sold. Some further objections are made, but without determining any of the questions raised by counsel, we think, upon general principles of equity and justice, that this action cannot be maintained.

It appears on the face of the complaint, as well as by the proofs adduced, that the sum demanded for taxes is not only justly and equitably due upon the land, but that it is in point of fact *less* than it would have been if the strictly legal course contended for by counsel had been pursued. In addition to this, the plaintiffs were not called upon to pay it until a year after it should have been in the public treasury. The payment of taxes equitably and fairly assessed is a duty which every man is under the strongest legal and moral obligation to perform to the government which affords him protection in his person and property. Governments cannot

exist without their revenues, and taxes are levied and contributions enforced upon the principle that they are but just returns for the protection and advantages derived from them. In this sense a proper tax—one which is just and correct in principle—is a debt due to the government, which the owner of property has no more right in equity and conscience to withhold, than the most sacred debt of a private nature. It is indeed, when seen in the light of reason and justice, far more sacred and obligatory, inasmuch as the considerations whence it proceeds are the highest and most inestimable rights and privileges enjoyed by the citizen. To withhold it, therefore, is a public wrong, which affects the whole community, and which cannot be justified or excused by any rule of equity or sound morality. This may be contrary to popular notions, but it is the just and enlightened view of a court of equity, which never moves except to prevent fraud and injustice, and where the relief asked conforms to the principles of rectitude and honesty. It is very well known that there are many persons whose moral perceptions are so obscure and confused, and whose selfishness is so great, that they seem to regard almost any means by which the revenues of the state may be defrauded, or moneys in the public treasury got *out*, as upright and honorable. One might suppose from their conduct that they considered such practices the highest evidence of public virtue and patriotism. Unfortunately for such projects, courts of equity take a different view; and that branch, at least, of the government against whose success and prosperity they are aimed, will, if applied to, promptly refuse its aid. The collection of a tax, under the statute, is a legal proceeding to enforce the payment of a debt due the public, and like proceedings at law upon a private claim, equity will only interfere to prevent injustice by the unfair use of the process of the law. The primary and controlling principle in such cases is, that the proceedings to be stayed are inequitable and unjust, and that it will be against conscience to allow them to go on.— *Stokes vs. Knarr*, 11 Wis., 389; *Ableman vs. Roth*, 12 Wis., 91. It will not be enough to show that they are irregular or even void. Courts of equity do not sit to reverse or cor-

June Term,
1861.

WARDEN et al.
v.
SUP. FOND DU
LAC CO.

rect errors and mistakes of law. To be entitled to their assistance, the party applying must show that he is in danger of unjustly losing a substantial right, and that he is in no fault. Neither of these things appears in this case. In order to avoid the difficulties of which they complain, the plaintiffs have only to pay the taxes which they admit to be a proper charge on their lands. Without. therefore considering the embarrassments and general disorder of the public finances which would follow the free use of injunctions in cases like this, and which constitute powerful motives against it, and aside from the general principles which govern the granting and refusal of such writs (*Sheldon vs. Rockwell*, 9 Wis., 180), we are of opinion, upon the basis of natural equity and justice, that the plaintiffs are not entitled to the relief demanded.

Nor is this a new application of familiar principles of equity. The same rules were substantially applied by the court to a case of irregular taxation in *Mills vs. Gleason*, 11 Wis., 497. It was there observed that perhaps the only method of solving the difficulty between illegal and oppressive taxation on the one hand, and the danger of defeating entirely the collection of the public revenue on the other, was to hold that no objection which did not go to the very ground work of the tax, so as to effect materially its principle, and show that it must be necessarily illegal, ought to have the effect of rendering the tax invalid. See also *Bank of Columbus vs. Hines*, 3 Ohio St. R., 36, 49 ; *Com'rs Lucas Co. vs. Hunt*, 5 id., 448 ; *Williams vs. Mayor of Detroit*, 2 Gibbs (Mich.), 582 ; *Hope vs. Sawyer*, 14 Ill., 254. Where it appears that the *established principle* of taxation has been violated, and that *actual injustice will ensue*, or that the tax is levied for an unauthorized purpose, of course equity will, in proper cases, interfere to prevent the wrong, and so this court has held. For these reasons, the judgment of the circuit court is affirmed, with costs.