MILLS VS. JOHNSON, Clerk of the Board of Supervisors of Dane County.

The charter of a city declared that on or before the 1st of July in each year, the assessors should return their assessment roll to the common council by depositing the same with the clerk; that when the roll should have been revised and corrected by the council, it should be filed with the clerk, and an order approving it entered in the proceedings of the council; and that on the first Monday of July in each year, or within ten days thereafter, the council should determine the amounts of taxes to be levied for general city purposes &c., and should, by resolution, levy the same.    In an action to restrain the execution of deeds for lands in said city, sold for taxes of 1858, it appeared that the council, through inadvertence, did not determine the amounts and levy the taxes for that year until the 26th of July, and that the assessment roll was not filed and corrected until August following.    *Held*, that these irregularities would not avoid the tax, even at law; and still less would they entitle the plaintiff to relief in equity.

The case distinguished from *Thayer v. Stearns*, 1 Pick., 482, and other cases which arose under statutes requiring the assessment rolls to be lodged with the clerk before complaints could be heard and mistakes corrected.    The charter in this case provided for such redress of grievances by the board of assessors *before* the roll was to be deposited with the clerk, and it was not claimed that the plaintiff was deprived of this remedy.

It was alleged that between the return of the delinquent list and the sale, large sums were unlawfully added to the amounts charged against the several lots, and that they were included in the amounts for which the lots were sold and the certifi-

cates given. *Held,* that if the allegation had been sustained by the proof, the plaintiff would have been entitled to restrain the execution of deeds in pursuance of such sales, in case the sums so unlawfully added could not be ascertained and distinguished from those properly chargeable on the lots.

But it appearing that the sums so unlawfully added (if any) could be distinguished from those justly due, the plaintiff could be relieved from the former only by paying or offering to pay the latter.

The book-keeper in the office of clerk of the board of supervisors of Dane county, as a witness for the defendant, testified that he made a certain statement and computation which was introduced in evidence by the defendant, and which, if properly authenticated, showed that certain sums had been unlawfully added to the amounts charged on the delinquent list against the several lots of the plaintiff. He also testified that he made it at the instance of the defendant's attorney; and that he *supposed* he compiled it from records in the office of the clerk of the board—*probably* from the delinquent tax roll. On cross-examination he said: " I made these computations myself, and believe them to be correct. They were made on the delinquent returns as a basis." *Held,* that the documentary character of the paper was not sufficiently established to allow it to prevail against the presumption in favor of the official acts of the treasurer, and the legality of the sale,

APPEAL from the County Court of *Dane* County.

Action to restrain the defendant, as clerk of the board of supervisors of Dane county, and his successors in office, from executing tax deeds for certain lands in the city of Madison, and to have the certificates of sale of said lands for the taxes of 1858 declared illegal, &c. The county court found the following among other facts: 1. That the only action of the common council of said city relating to the levying of the taxes for 1858, was at a meeting of said council held on the 26th of July of that year. 2. That said council did not enter any order approving the assessment roll for 1858, nor take any action thereon, until after said 26th of July. 3. That the amount for which the lots were sold was greater by $15.64 than the amount with which they were charged in the tax list, with all charges added which by law were to be added thereto. —The court held the sales to be void, and granted the injunction prayed for. The defendant filed exceptions to the two last findings of fact above stated, and to the conclusions of law; and appealed from the judgment.

The evidence upon which the third finding of fact was based was as follows: George C. Russell, as a witness for the defendant, testified that he was book-keeper for the county of Dane, in the office of the clerk of the board of supervisors. Being shown a certain written statement and computation (which is described in the opinion of the court), he said: "I made this statement and computation. I suppose I compiled it from records in the office of the clerk of the board—probably from the delinquent return or tax roll. I made this at the instance of the defendant's attorney." Witness then explained the paper, and added: "This memorandum is of a portion of the taxes returned as delinquent from the city of Madison for 1858." The paper was then read in evidence. On cross-examination the witness said: "I made these computations myself, and believe them to be correct. They were made on the delinquent returns as a basis."—The "Sales Book" kept in the office of the county treasurer was also produced in court, and the record therein of the sale of the plaintiff's lots for the taxes of 1858 was duly put in evidence.

*H. M. Lewis* and *S. U. Pinney*, for appellant.

*Julius T. Clark*, for respondent:

1. The city charter, ch. VII, sec. 8, required the assessor to return the assessment to the common council, as the basis of the levy of the tax, "on or before the first day of July in each year." The assessor did not make his return until some time in August, and after the levy of the tax. The 8th and 9th sections required the assessment roll to be revised and corrected by the council *before* levying any tax upon it. This was not done. The 9th section also required the council to levy the tax "on the 1st Monday of July or within ten days thereafter." The tax was not levied until the 26th of July. As to the effect of these omissions and neglects, see *Thames Man. Co. v. Lathrop*, 7 Conn., 550; *Blossom v. Cannon*, 14 Mass., 178; *Thurston v. Little*, 3 Mass., 432; *Marsh v. Chesnut*, 14 Ill., 223; *Thayer v. Stearns*, 1 Pick., 482; *Henry v. Chester*, 15 Vt.,

468; Blackwell on Tax Titles, 130, 145–7. 2. The sale was void for the further reason that every lot was sold for more than the pretended taxes with all legal charges added. Blackwell, 192; *Elwell vs. Shaw*, 1 Greenl. R., 339; *Torrey vs. Millbury*, 21 Pick., 70; *Bangs vs. Snow*, 1 Mass., 188–189; *Drew vs. Davis*, 10 Vt., 506; *Thurston vs. Little*, 3 Mass., 429–433; *Dillingham vs. Snow*, 5 id., 547; *Stetson vs. Kempton*, 13 id., 283: *Libby vs. Burnham*, 15 id., 144; *Hayden vs. Foster*, 13 Pick., 492; *Alvord vs. Collin*, 20 id., 418; *Kemper vs. McClelland*, 19 Ohio, 324.

*By the Court*, DIXON, C. J.   This case presents several questions in common with *Dean vs. Gleason* already decided (16 Wis., 1), and as to such we refer to the opinion in that case. We shall notice only those points in which the cases differ.

Section 8 of chapter 7 of the charter of the city of Madison (Private and Local Laws of 1856, p. 104), requires the assessors to return their assessment roll to the common council by depositing the same with the clerk, on or before the first day of July in each year. Section 9 declares that when the assessment roll shall have been revised and corrected, the same shall be filed with the clerk, and an order approving the same shall be entered in the proceedings of the common council. The same section also declares that on the first Monday of July in each year, or within ten days thereafter, the common council shall determine the amount of taxes to be levied for general city purposes, and also the amount of money necessary or required to be levied for school purposes, and shall by resolution levy the same.   In this case it is assumed, though the fact is not very clearly established by the record, that the assessors did not make return of the assessment roll until some time in the month of August.   It also appears, that the common council inadvertently omitted to determine the amounts and levy the taxes for general city and school purposes until the 26th day of July, when their attention was called to the

subject by a special message from the mayor, who had likewise overlooked the provisions of the charter. It is furthermore shown that the assessment was equalized and approved by the common council in the month of August after.

These are the irregularities complained of as to the levy and assessment;. and it is clear to us that they are not of sufficient force to invalidate the tax in a court of equity. They all relate to the time in which the several steps were taken, and none of them reach the ground work and substance of the proceeding. They do not go to the equity of the tax, but only to mistakes and imperfections purely technical in their nature, which under our system can never be wholly avoided in proceedings for taxation, and which do not affect the merits or justice of the claim on the part of the public. *Warden vs. Supervisors*, 14 Wis., 618. But more than this, we are of opinion that they are not such defects as would vitiate the tax at law. The provisions of the charter as to time are directory, and a failure to comply with them did not avoid the proceeding.

It is likewise urged that the common council could not determine the amount of taxes and levy the same until the assessment roll had been returned and revised and corrected as prescribed in section 9; and several authorities are cited. The statute does not positively require this. It is only by implication from other provisions that we are informed that such was the course of proceeding intended by the legislature. It differs materially from those statutes under which the cases cited arose, and the same reason does not exist for holding it mandatory and imperative upon the taxing officers. In those cases the assessment lists were required to be lodged in the clerk's office before complaints could be heard, mistakes corrected and grievances redressed; and, if they were not so lodged, the aggrieved tax payers lost the remedy thus provided. But in this case it was not so. The assessors were required, before making their return, viz., on the second Monday of June, and at such other time or times as they might ap-

point, to meet at the common council chamber, for the purpose of hearing any objections of parties deeming themselves aggrieved by such assessment, and, after hearing the same, to make such alterations and revisions as justice or equity might require. Charter, chap. 7, sec. 7, It is not claimed that the plaintiff was deprived of this remedy.

A further objection urged in this case is, that after the return of the delinquent lands by the treasurer of the city to the treasurer of the county, and before the sale by the latter, large sums were unlawfully added to the delinquent list for the city, and for which the lands were sold and certificates delivered. If this were so, and the sums added could not be ascertained and distinguished from those properly chargeable upon the lands, it would undoubtedly constitute good ground in equity for arresting further procceedings upon the certificates. But if the sums added could be separated from the legal taxes and charges, equity would require the payment of the latter as a condition of relief against the former. For the unlawful addition would not affect the validity of the prior proceedings. The levy, assessment and return would be still good, and only the proceedings from the sale onward bad. Assuming that the complaint in this respect was sustained by the proof, such would have been the condition of the plaintiff. The sums alleged to have been unlawfully added are clearly ascertained and known. Upon payment of the lawful taxes and charges, amounting to $953.36, the plaintiff would have been entitled to relief against an illegal excess of $15.64. But we are of opinion that this part of the case is not made out in evidence. The only witness called to it produced a paper, from which it is claimed that the addition of the unlawful sums appears. This paper corresponded with the city treasurer's return so far as the lands in question are concerned, to which was added in separate columns the increased costs and charges. There were, in distinct columns, the lots and blocks properly described, amount of taxes on each, the five per cent. additional, taxes

and five per cent. added, interest, advertising fees, and fees of the treasurer, and the whole accurately computed. By comparing the amounts of these several items with the amounts for which the lots were sold, as appears from the treasurer's sale book, the unlawful excess is shown, in some cases more and in some cases less, upon each lot. If this paper was properly authenticated, we should have no hesitancy in declaring the plaintiff's right to relief. But it was not. For all that conclusively appears, it may have been a mere random paper prepared for the occasion. We do not say that this was so, but only that its documentary character was not sufficiently established to entitle it to credit, and to allow it to prevail against the presumption which attaches in favor of the official acts of the treasurer and of the legality and sufficiency of the sale. In other words, we cannot receive it to prove forgery or wicked and corrupt misconduct in office on the part of the treasurer or his assistants, and thus to overturn the sale. In relation to it, the witness testifies: "I made this statement and computation. *I suppose I compiled it from records in the office of the clerk of the board—probably from the delinquent return or tax roll.*" It is true that, on his cross-examination, he says that "the computations were made on the delinquent returns as a basis;" but this is not enough to overcome the doubt and uncertainty which arise from his testimony in chief. We cannot say that the correctness and authenticity of the paper are satisfactorily established.

It follows that the judgment below must be reversed, and the cause remanded with directions to dismiss the complaint.