PLUMER vs. THE BOARD OF SUPERVISORS OF MARATHON COUNTY and others.

CONSTITUTIONAL LAW: TAXATION: ACT OF 1878. *(1) Sec. 1 valid: valuation of realty and personalty. (2) Certain provisions mandatory. (3) Effect of noncompliance with mandatory provisions: legislative and judicial functions. (4) Limitation of actions; when within legislative discretion: secs. 6–9 valid. (5) Secs. 10 and 12 valid. (6) Legislative power to provide for stay of proceedings, and prescribe conditions of relief, in actions to avoid taxes. (7) Assessment cannot be made conclusive evidence of amount due. (8) When reassessment or payment cannot be required. (9) Sec. 3 invalid.*

PRACTICE: WAIVER. *(10) Waiver of right to have certain issues disposed of.*

EVIDENCE: *(11) To impeach good faith of assessment; what* prima facie *sufficient.*

1. Sec. 1, ch. 334 of 1878, is not invalid on the ground that the rule provided for the valuation of realty is different in detail from that for the valuation of personalty; both kinds of property being required to be assessed at their full value.

2. The proviso to sec. 2 of said act (*"provided* that nothing herein contained shall be held or construed as relieving such officer from the performance of any duty now required of him by law, nor from any penalty or liability now prescribed by law for neglect or failure to perform the same"), in effect declares *mandatory* the compliance of all the officers therein named with all duties covered by the section which were mandatory before.

3. The provisions of said sec. 2, therefore, 'that no omission by the taxing officers of certain duties there named shall invalidate the assessment or tax, unless it shall affect the substantial justice of the tax, is invalid, as an intrusion upon the judicial function.

4. The provisions of secs. 6–9 limiting the time for bringing actions based upon the alleged invalidity of taxes, as they give a reasonable opportunity for bringing such actions, are within the legislative discretion.

5. Sec. 10 of said act (which authorizes certain county officers to compromise with parties for taxes returned as delinquent, when it is claimed that such taxes are illegal, and there is reasonable cause to believe them so), and sec. 12 (which disqualifies assessors as witnesses to impeach their own assessments), are valid.

6. The legislature has power to provide, that in actions to avoid taxes, where the court is of opinion that the tax should be avoided for reasons affecting its groundwork, there shall be a stay of proceedings until a reässessment shall be had, and that plaintiff shall be required, as a condition of relief, to pay the just amount of his tax to be ascertained by reässessment.

7. Sec. 5, and probably sec. 4, of the act of 1878, are however invalid because they attempt to make the reässessment there provided for, *conclusive* evidence of the amount justly due for taxes from the plaintiff in such an action.

8. Reässessment or payment cannot be required as a condition of relief where the tax *is for illegal purposes* (as it cannot where the property was exempt from taxation, or the tax has in fact been paid); and where there has been no constitutional assessment and liquidation of the amount of tax due from the tax-payer, he cannot be compelled, at his peril, to liquidate his own tax.

9. Sec. 3 of said act denies relief to a party seeking it, against an apparent tax, *even where no valid tax has been assessed*, except upon condition. that he offer to pay his just proportion of the tax, to be determined by himself; and it provides that if his offer is accepted, the suit shall be dismissed, and if it is not accepted, and is found not equal to his just share of tax, judgment shall go against him for such just share, with costs, etc. *Held*, that it is invalid under the principles above stated.

10. Where defendant moved for a nonsuit on each of six causes of action stated in the complaint, but assigned special grounds for the motion applicable only to the first three of them, and the record shows clearly that both the parties, and the judge of the court below, regarded the other three as out of the case, after plaintiff rested and until judgment: *Held*, that the judgment will not be reversed, on defendant's appeal, upon the ground that it does not dispose of the last three causes of action.

11. Plaintiff having impeached the good faith of the assessments complained of in this case, by such evidence as can alone generally be given for that purpose, under the existing statute of 1878, and defendants having failed to call the assessors as witnesses, or to account for not calling them, or to rebut in any way plaintiff's evidence, there was no error in refusing a nonsuit.

APPEAL from the Circuit Court for *Marathon* County.

Action, (1) to avoid taxes assessed on plaintiff's property in the city of Wausau during the year 1875, on the ground that there was no valid assessment of the property for taxation during that year; (2 and 3) to avoid taxes assessed on said property during the years 1876 and 1877, respectively, upon like grounds; (4) to avoid certain bonds of " School District No. 1, City of Wausau," and to avoid the taxes assessed on said property during the years above named, on the ground that they included sums assessed to pay said bonds, and that the amount of the tax charged to plaintiff's property for that purpose could not be distinguished from the amounts charged. for other purposes; (5) to restrain the common council of said city from disposing of county orders of the county of Marathon, in their possession, for the purpose of paying said last-mentioned bonds; and (6) to avoid said taxes of 1875, 1876 and 1877, on the ground that they included an illegal tax for a certain local improvement in said city, and that the amount

of the tax charged to plaintiff's property for that purpose could not be distinguished from that charged for other purposes.

The defendant's answer made issues upon all the causes of action alleged.

On the trial, plaintiff put in evidence the assessment rolls of the city of Wausau for the years 1875, 1876 and 1877, and introduced a large amount of testimony to sustain the three first causes of action. This evidence will not be stated. Its general effect, as understood by this court, will appear from the opinion. On defendant's objection, the persons who acted as assessors of the property in 1875 and 1876, called as witnesses for the plaintiff, were not allowed to give any testimony as to the value of property in those years, which would impeach their respective assessment rolls and certificates. Defendant also objected to all testimony as to the value of any other property than that of the plaintiff; but the objection was overruled. Plaintiff also introduced some evidence to sustain his fourth cause of action.

When plaintiff rested, defendant " moved for a nonsuit upon each of the causes of action separately, for the reason that there is no proof that the assessor, for the years 1875 and 1877, did designedly and fraudulently assess the property as alleged in the complaint; secondly, that the mere fact that the assessor assessed property at less than its true value, is not sufficient to warrant the maintaining of an injunctional order in a proceeding of this nature; also, for failure of proof." The motion was denied. Defendants then moved to stay proceedings, under sec. 5, ch. 334 of 1878, until a reässessment of the property could be had. The court reserved its decision upon this motion. Defendants were then permitted to amend the answer as to the fourth cause of action, by setting up certain facts. Afterwards, defendant moved for a nonsuit generally, which was denied.

The circuit court found, *inter alia*, that the assessments in

said city for 1875 and 1877, as returned by the assessors, were by those officers "knowingly and fraudulently made upon a basis of one-half and one-third of the actual cash value of all the taxable property, both real and personal, of said city of Wausau, and in no case at its full value, or the price which the owners would have been willing to take for the same, had they been desirous of selling;" and that, after the assessor in 1876 had made the assessment of all the taxable property in said city, the board of equalization of said city, "knowingly, intentionally and fraudulently changed said assessment, arbitrarily and of their own motion, by reducing the same in some cases one-half, and in some cases one-third, for the purpose of establishing an assessment at the rate of one-half and one-third the actual cash value of all the property, both real and personal, of said city, liable to taxation." The other findings related to the steps taken to enforce the collection of the taxes of said years upon plaintiff's property. As conclusions of law, the court held that the assessments of plaintiff's real and personal property, and of all the property in said city, for the years named, were void; that the sales of plaintiff's lands for taxes of those years, and the certificates thereof, were void; and that plaintiff was entitled to have judgment cancelling and annulling such assessments, sales and certificates. Judgment was thereupon entered cancelling and annulling said assessments, sales and certificates, and restraining the collection of any of the taxes on plaintiff's property, real or personal, for said three years, and also restraining the issue of any tax deed based upon the sales already made. From this judgment the defendant appealed.

*Wm. F. Vilas*, for the appellant:

1. Defendant was entitled to a stay of proceedings under sec. 5, ch. 334 of 1878. (1) That section declares that it shall apply to all cases "hereafter *tried;*" and the whole act discloses the legislative intention that it shall govern past as well as future assessments. (2) That section applies

to assessments defective "for causes mentioned in this *act;*" and the causes mentioned in section 3 cover this case. (3) The act is valid. (a) It does not contravene sec. 9, art. I of the state constitution, which declares that "every person is entitled to a certain remedy in the laws for all injuries," etc., and "ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." A tax is a debt, chargeable as a lien on the real estate on which it is attempted to be levied, from the time the first proceedings are instituted to fix its amount and collect it. *Curtis v. Supervisors*, 22 Wis., 167, 171; *Peters v. Myers*, id., 602; *Warden v. Supervisors*, 14 id., 618; *Marsh v. Supervisors*, 42 id., 502. Whenever a tax is attempted to be levied for lawful purposes, and fails of collection through any defect or want of legality (whether a mere formal irregularity or a defect going to the groundwork of the tax), it may be reässessed under legislative authority *(Tallman v. Janesville*, 17 Wis., 71; *Cross v. Milwaukee*, 19 id., 509; *May v. Holdridge*, 23 id., 93; *Mills v. Charleton*, 29 id., 400; *Dill v. Roberts*, 30 id., 178; *Marsh v. Supervisors, supra)*, and, as already shown, it is a lien from the time of the first levy. Such reässessment (under the same line of decisions) is to be made by the assessor and other proper officers in office when it becomes necessary; and, when made according to law, it is conclusive of liability to pay the amount. It is also well settled that one who comes into equity to set aside proceedings for the collection of a tax on the ground that it is unjust, will not be relieved, where the just amount of his debt to the public is ascertainable, without payment of such just debt. *Myrick v. La Crosse*, 17 Wis., 443; *Warden v. Supervisors*, 14 id., 618; *Howes v. Racine*, 21 id., 514; *Marsh v. Supervisors, supra*. Plaintiff's utmost right, under the laws, therefore, is to have the tax certificates and other proceedings which are illegal, set aside and annulled *on condition* that he pay to the

public so much of the debt as he justly owes; the mode provided for ascertaining how much he owes, is strictly according to the constitution and the settled rules of this court, and is such that, if followed as directed, the result becomes conclusive of the amount. *Whittaker v. Janesville*, 33 Wis., 76; *Wakeley v. Mohr*, 15 id., 609; *Wakeley v. Nicholas*, 16 id., 588. Plaintiff, then, is not debarred of his *right* by these statutory proceedings for a reässessment, etc., nor of a *certain* remedy. In fact, the remedy is more nicely adjusted, and more conformable to the right, than before. Nor can he complain of any want of *speed* in procuring it. He suffers nothing by delay. During the time necessary for the ascertainment of his just debt, the injunctional order prevents any injury to his rights. That is not a hindrance to justice which is necessary to its correct ascertainment. The statutory provision for ascertaining plaintiff's rights is no more unconstitutional than is the familiar practice of referring it to a master in chancery to settle and adjust the amount to be paid by a complainant as a condition of relief, when, in certain cases, that has become necessary. *Von Baumbach v. Bade*, 9 Wis., 59, and cases cited in V. & B.'s notes. (b) The act does not delegate judicial power to the assessors. No power is delegated to them which does not belong to their proper function. They are authorized to do nothing *before* judgment, which they may not rightfully do *after* judgment; nothing which the court has any right to do. Nor does the statute declare how their action shall affect the judgment. That is left to the settled rules of this court. (c) The declaration that the reässessment shall be conclusive evidence, does not affect the question; for the act expressly provides that the reässessment shall be made "in the manner specified in sec. 1 of this act." In other words, the reässessment is to be made *according to law*, the public law of taxation. If it is not so made, but proceeds upon principles repugnant to that law, the failure to observe it is *jurisdictional*, and the

reässessment becomes void under the act itself. *Marsh v. Supervisors, supra.* If, on the other hand, the reässessment proceeds according to law, it is a valid liquidation of the plaintiff's public debt, which the court should enforce. The section makes the reässessment roll a *public record*, and as such *evidence conclusive*. But it requires the same to be made according to law and jurisdictional principles. Not so made, it is not a *record*, and the statute has no application. *Rape v. Heaton,* 9 Wis., 328, and cases cited in V. & B.'s notes. Mere technical informalities or irregularities, which do not affect the justice of the tax or alter the true and just amount thereof, and are not *jurisdictional*, ought not to affect plaintiff's duty in equity to pay it. *Warden v. Supervisors, supra; Mills v. Gleason,* 11 Wis., 470, and cases cited in V. & B.'s notes. The legislature may prescribe rules of evidence *(Sueterlee v. Sir,* 25 Wis., 357); but this statute declares no rule of evidence which would not obtain independently of it. If, however, this provision declaring the effect of the reässessment as evidence were held invalid, that would not destroy the validity of the other provisions of the section. (d) It is asked, When will the stay cease? It is clear that when the reässessment is made, the court may proceed to judgment. And if there be unreasonable delay, the court, on that fact being shown, can proceed earlier. It is not the possible abuse, but the right use, of a remedy provided by the legislature, which is to be regarded in passing on its constitutionality. And while the stay operates, plaintiff takes no injury, the defendants being restrained by the temporary injunction. 2. The judgment must be reversed because the plaintiff did not comply with sec. 3 of the act of 1878, which required him to offer in writing to pay such sum as he deemed his just proportion of taxes on the property in question, within such time as the court should order, before he should be entitled to the relief prayed for. This is in accordance with the equitable doctrine already considered; is a convenient and useful pro-

vision; and will enable counties and other municipalities to profitably and summarily terminate much litigation. The provision regarding costs is in accordance with numerous other provisions in the statutes, which impose on parties the duty to endeavor to agree (R. S., secs. 2789–91, and 4269); and costs may be given or withheld at the legislative pleasure. *Supervisors v. Briggs*, 3 Denio, 173; *Low v. Rogers*, 8 Johns., 321; *Washburn v. Overseers*, 9 id., 119.

Counsel also contended that the evidence did not sustain the findings, and that the court erred in failing to pass upon the last three causes of action.

*Chas. F. Crosby*, on the same side.

For the respondent, there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*. They contended, among other things, 1. That the findings were sustained by the evidence, and showed the several assessments complained of, and the taxes based upon them, to be void within the rule in *Marsh v. Supervisors*, 42 Wis., 502, and *Schettler v. Fort Howard*, 43 id., 48. 2. That the court properly denied a stay of proceedings. (1) Sec. 5, ch. 334 of 1878, does not apply to assessments made before its enactment. Statutes are not to be considered retrospective unless the intention to give them that character is clearly expressed; and the fact that the language is general, and may cover past as well as future transactions, is immaterial. *Seamans v. Carter*, 15 Wis., 548; *State v. Atwood*, 11 id., 422; *Finney v. Ackerman*, 21 id., 268; Sedgw. on Stat. & Con. Law, 188. Secs. 11, 13 and 14 make express provision for past illegal assessments; a provision wholly unnecessary if sec. 5 applied to such assessments. (2) The section by its terms applies only to assessments sought to be avoided " for any of the causes mentioned in this act;" and this seems to refer to the causes enumerated in sec. 2, not including cases where there has been no valid assessment. The legislature could not have intended that jurisdictional defects like those in this case should be remedied by legisla-

tion. *Marsh v. Supervisors*, 42 Wis., 504. (4) If construed as including cases of this character, the section is repugnant to sec. 9, art. I of the constitution, depriving a person threatened with the collection of a tax wholly void for jurisdictional defects, of his right to " a certain remedy in the laws," his right to obtain justice freely, completely and promptly. When such a person has brought his action, and has made out a case entitling him to the relief demanded, the statute prohibits the court from granting such relief, and instead thereof grants to the party in fault a stay of proceedings. There is to be an immediate assessment in the manner prescribed by sec. 1 of the act, by the same officers who were guilty of fraud in the past; their assessment roll and tax become a public record, and conclusive evidence as to the amount of tax justly chargeable against plaintiff's land, etc. What becomes of plaintiff's suit; whether he recovers judgment for costs; whether he obtains the relief asked for; whether the old tax certificate is to remain a cloud upon his title; and how long the stay is to continue — are problems which the bar of this state are trying in vain to solve. Under the belief that he was entitled to a speedy and certain remedy in the law, plaintiff brought suit to remove a cloud upon his title; he showed that he was entitled to have that cloud removed; yet, on defendant's theory of the law, he is to be delayed until the board create a new and absolute cloud upon his title. Every action must end in a judgment, a final determination of the rights of the parties. Under the act in question, what is to be the final determination of the rights of the parties, and when will it be made? An action is brought to vacate an assessment as excessive or not uniform; another assessment is made equally or more objectionable, and is declared to be conclusive. But admit that the second assessment can be impeached: what becomes of the action? Is the suitor to remain in court, his land tied up in litigation, the cloud still upon his title, unable to sell, until assessors can be found with sufficient intelligence and integrity

to make a valid assessment? Under such an act the plaintiff is either never to have his relief, or is to be postponed to some uncertain period, so remote that he has practically no remedy whatever. The act in truth deprives him of all remedy by injunction to restrain the sale of his land for taxes. *Whittaker v. Janesville*, 33 Wis., 76; *Durkee v. Janesville*, 28 id., 464; *Oatman v. Bond*, 15 id., 20; *Soutter v. Madison*, id., 30; *Von Baumbach v. Bade*, 9 id., 559; Cooley's Con. Lim., 289. The constitution gives the suitor a certain remedy in the *courts*, not before a board of assessors. (4) The section is void because it attempts to delegate judicial power to the assessors. Under it, when the court has ascertained that the tax should be set aside, the duties of the court cease, and the assessors instead of the court determine absolutely and without appeal what the plaintiff shall pay as a condition of relief. Thus the decision of the assessors takes the place of that of the courts. *Gough v. Dorsey*, 27 Wis., 130; *Van Slyke v. Ins. Co.*, 39 id., 399; *Callanan v. Judd*, 23 id., 350; *Att'y Gen. v. McDonald*, 3 id., 805.

*Carl H. Mueller*, on the same side.

RYAN, C. J. I. The record in this appeal presents several peculiarities apparently overlooked in the court below, and on which no point is made in this court. There is one, however, on which the appellants claim that they are entitled to a reversal of the judgment.

The complaint contained six separate causes of action. On the fifth and sixth, no evidence whatever appears to have been introduced. The fourth became immaterial to the judgment, upon the denial of the motion for a nonsuit on the three first.

The appellants moved for a nonsuit upon each of the causes of action, but assigned special grounds for the motion applicable to the three first causes of action only. The motion was overruled; and thenceforth the three last causes of action do

not again appear in the record; the findings of the court, the exceptions taken by the appellants, and the judgment, wholly ignoring them.

It is now assigned for error that the findings and judgment do not dispose of these three causes of action. But the court cannot hold this to be good ground of reversal, under the circumstances. It is quite apparent in the record that both the parties, and the learned judge of the court below, regarded the three last causes of action as out of the cause, after the respondent had rested his case, and until judgment. If the appellants had intended to rely on this ground here, they were bound, under the circumstances, in justice to the respondent and in fairness to the court below, to have called attention to it below, by motion or suggestion, so that the respondent would have had an opportunity of discontinuing the three last causes of action, or that the learned judge .of the court below might have covered them in his findings and in the judgment. The peculiarity of the record in this respect makes it too late to raise the point for .the first time in this court.

II. It was conceded at the bar that the nonsuit was properly denied on the second cause of action. But it was claimed that the evidence given was insufficient to support the first and third causes, within the rule of *Dean v. Gleason*, 16 Wis., 1, and *Smith v. Smith*, 19 Wis., 615, recognized in all the cases. The court cannot assent to this view. The respondent appears to have given sufficient evidence, *prima facie*, to impeach the whole of the assessment rolls. The evidence tended to establish more than mistakes; tended to establish bad faith in the assessments. And this view is accepted with the greater confidence, because the appellants made no attempt to rebut the case of the respondent. If the assessment rolls could be defended, the means of defense were peculiarly in their power. It should not be overlooked that, as the law now stands, an assessor is an incompetent witness to impeach,

but a competent witness to support, his own assessment roll. And when the assessment rolls were impeached by such evidence [as the respondent gave, of the only character which can now be generally given, the failure of the appellants to call the assessors, or to account for not calling them, is not a little significant. It must be held that nonsuit was properly denied.

III. When the motion for a nonsuit was overruled, the appellants moved to stay proceedings under section 5, chapter 334 of 1878, now embodied in section 1210 *b*, Revised Statutes, until a reässessment could be made under that section. The motion was denied, and the court below proceeded to judgment for the respondent, on the ground, as it is understood here, that the provisions of the section are in violation of the constitution; and that is the great question in the case.

The failure of assessors to perform their duties according to their oaths, under statutes faithfully and carefully framed to carry out the constitutional provision that the rule of taxation shall be uniform, has been a fruitful source of litigation, and has seriously embarrassed the collection of the public revenues. Chapter 334 of 1878 was obviously designed to mitigate this evil. Whether or not some such statute would be the best remedy; whether or not it might not have been better to have left the law as it was, and to provide for the prosecution of every assessor violating his duty and his oath, — are not questions for this court. All that rested exclusively in legislative discretion. The only duty of the court is, to sustain, as far as it can without violation of the constitution, any measure which legislative wisdom may adopt tending to insure the collection of the public revenues; and that duty the court is disposed most cheerfully to perform.

Saying this, however, it is proper to say also, that the court adheres fully to the doctrine of the late cases, *Hersey v. Supervisors*, 37 Wis., 75; *Marsh v. Supervisors*, 42 Wis., 502; *Philleo v. Hiles*, id., 527; *Schettler v. Ft. Howard*, 43

Wis., 48; *Goff v. Supervisors*, id., 55; *Salscheider v. Ft. Howard*, 45 Wis., 519. It might be regretted that the court ever sustained proceedings in equity to enjoin tax deeds or tax proceedings upon grounds available at law, as coming within the general jurisdiction of courts of equity. But the regret would come too late, after such numerous cases, running through nearly forty volumes of the reports.

And whatever inconvenience the late exercise of this jurisdiction in the cases above cited may have caused, it seems to have been productive of great good. It appears by the governor's late message, that the assessment of the whole state rose over a hundred millions from 1877 to 1878; still being, in the opinion of the governor founded on statistics, little more than half what it should have been. The assessment roll of the taxing district in question here, appears to have amounted in 1877 to $471,866, and in 1878 to $851,627.35. This indicates great progress towards assessing property at its true value; the only certain or safe basis for the constitutional rule of uniformity. And the court may well claim for its late decisions some credit for the great increase of assessed values during the last two years. But, however all this may be, the court will be none the less rejoiced to sustain any constitutional statute tending to avoid frequent appeals to equitable interference on behalf of large tax-payers, which small tax-payers cannot generally afford; thus making taxes actually paid unequal.

In this spirit, the statute now before the court will be considered. The main question here is upon section 5. But objections were made to several other sections, which the court was pressed to pass upon, and which, upon public considerations, will be noticed in their order. All the sections in question are embodied in the recent revision, but for convenience they will be considered in their original form, as found in chapter 334 of 1878.

1. It was objected to section 1, that the rule provided for

the valuation of realty is different in detail from the rule for the valuation of personalty. So in some respects it has always been, and may well be. It is sufficient to satisfy the constitution, that the rule of the section provides for the valuation of real property at its full value, and that the assessor must use the best practicable means of ascertaining the value. It might have been better to have required it to be valued, as far as practicable, from actual view. But that was for the legislature alone to determine. In *Marsh v. Supervisors*, it was urged by counsel that assessment of realty upon actual view in that case was impracticable. But the court answered: " The statute is peremptory, taking the case out of all rule of what is called reasonable construction. We cannot interpolate exceptions in it. Such an argument, which can have no force with courts, ought to have great weight with the legislature. It was probably in view of some such difficulty that the affidavit was changed by the statute of 1873. But we surely have no power to antedate that provision."

2. It was objected that section 2, in declaring the effect of failure of assessors and other officers to comply in certain respects with the law, is an intrusion upon the judicial function. And so the court must hold. It is perhaps competent for the legislature so to frame any provisions for the action of officers in tax proceedings, not going to the groundwork of the tax, as to make them directory only, not mandatory. But this the section does not attempt to do. On the contrary, the proviso in effect declares mandatory the compliance of officers with all duties covered by the section, which were mandatory before.

To provide for the whole process of taxation is purely legislative, subject only to the uniform rule of the constitution. To construe the process, when enacted, and to declare its effect, is purely judicial.

Speaking of the affidavits of assessors to be annexed to their assessment rolls, the court said in *Marsh v. Supervisors:* " The

statute is a just and wise enactment to secure the integrity of assessments, and so to fulfill the constitutional rule; quite adequate to those ends, when the official integrity of assessors reaches the standard of the statute under which they hold their offices. The policy and justice of the provisions recited are obvious; and it would be idle to enlarge upon their necessity to such just and equal rule of assessment as will satisfy the uniform rule of taxation. The oath required of assessors, that they have made the assessment in strict compliance with the statute, is manifestly intended to secure the fundamental rule of taxation against indolence, carelessness, evasion and willfulness, as well as against partiality and fraud, of those officers. The affidavit is the evidence, and the only evidence, accompanying the assessment, that values have been arrived at justly and properly, in compliance with the statute, and to fulfill the rule of the constitution. And the affidavit therefore appears to be made by the statute of the substance, and not of the form, of the assessment roll.

"There appears to be, indeed, no other check upon the conscience of the assessor: Few other ministerial officers have opportunity to disregard a great constitutional principle, or to violate grave private rights, with so much impunity. And the statute therefore puts this check upon him, bringing his official duty directly to the test of his personal truth and integrity. An assessor who has faithfully performed his duty, as the statute gives it to him to perform, cannot hesitate to make the affidavit. An assessor who hesitates to make the affidavit, hesitates because he has not performed his duty; because he has not followed the process given by the statute, to secure the fair and uniform rule of assessment essential to a just and constitutional tax. In other words, an assessor who fails to make the affidavit, impeaches the integrity of his own assessment."

Whether it would be wise or not, however, to dispense with the affidavit, it rests entirely in legislative discretion to

determine. But while the statute is mandatory, the court would be obliged to hold, as it did in *Marsh v. Supervisors*, that failure of the affidavit is failure of the valid assessment.

So of the verified statement required to be rendered by clerks of school districts to town clerks, for the assessment of school tax. The legislature may dispense with it; but until it does, or so shapes the requirement as to make it directory only, the failure to render the statement is fatal to the tax. *Matteson v. Rosendale*, 37 Wis., 254.

3. Some criticism was made upon secs. 6, 7, 8 and 9. But these are provisions of limitation entirely within legislative discretion, so that they give — as they do — reasonable opportunity for bringing actions.

No objections were made to secs. 10, 11, 13 or 14; and it is not apparent that any could be justly made.

Section 10 authorizes certain county officers to compromise with parties for taxes returned as delinquent, when it is claimed that such taxes are illegal, and there is reasonable cause to believe them so. This may be a dangerous power, subject to great abuse. But no ground was suggested, or is perceived, for holding it invalid. The policy of the provision rests wholly with the legislature.

4. Sec. 12 in effect disqualifies assessors as witnesses to impeach their own assessments. It was suggested that this was an unwise and oppressive provision. It is not for the court to determine that. It was clearly within legislative power, whether the discretion was wisely used or not. It puts an assessor in precisely the attitude in which the common law puts a juror. *Birchard v. Booth*, 4 Wis., 67. And this the legislature could surely do.

5. Secs. 3, 4 and 5 are kindred and to some extent cumulative provisions. This appeal chiefly involves sec. 5, though a question is also made on sec. 3.

There was some discussion at the bar on the question whether these sections applied to cases affecting the groundwork of a

tax. Sec. 3 in terms applies to all actions involving an assess-ment, tax or tax proceeding, on the ground that it is for any reason invalid, except when it is claimed that the tax has been paid or that the property taxed is exempt. Sec. 4 applies to actions where it shall appear that the assessment is void. Sec. 5 applies to actions to avoid an assessment, tax or tax proceed-ing for any of the causes mentioned in the statute. There is, therefore, no room for doubt that the three sections were de-signed to apply, and in terms do apply, to all cases within their provisions which involve the groundwork of a tax, except the single case of exemption from taxation.

The three sections appear to have a common object: that is, to impose conditions upon certain actions brought on foot of illegal taxes, and upon defenses against actions to foreclose tax deeds. They appear generally to proceed on the principle that one who assails a tax proceeding in such cases, must do it upon condition of paying the just share of tax chargeable to him or his property, and providing different modes of ascer-taining such share.

It is undoubtedly true that, as a general rule, one should not be permitted to maintain an action to avoid a tax proceeding, without paying his just share of the tax, when that is ascer-tained. This principle is recognized in all the cases. And so far as these sections apply to mere irregularities in a tax pro-ceeding, there might be little difficulty in enforcing them. For, in such cases, the proper amount of tax is already ascertained.

"Governments cannot exist without their revenues, and taxes are levied and contributions enforced upon the principle that they are but just returns for the protection and advantages derived from them. In this sense, a proper tax — one which is just and correct in principle — is a debt due to the govern-ment, which the owner of property has no more right in equity and conscience to withhold, than the most sacred debt of a private nature." *Warden v. Supervisors*, 14 Wis., 618. "But the debt is liquidated and matures only upon a valid exercise

of the taxing power." *Marsh v. Supervisors, supra.* When, however, an exercise of the taxing power fails for any cause, and the tax is reässessed, it is a debt due upon the reässessment as from the time when it should have been first assessed. *Peters v. Myers,* 22 Wis., 602.

And when, after action brought to avoid a tax proceeding, a reässessment shall have liquidated the just and true amount of the tax in controversy, the court might perhaps without statute, the legislature certainly can, make payment of the liquidated amount of tax a condition of relief. This appears to have been to some extent the principle of the sections under consideration.

The difficulty in section 3, in cases where the objection goes to the groundwork of the tax, is that it departs from the principle. Its provisions do not go upon reässessment or liquidation of the just and equal share of tax. The section requires the party impeaching the tax, within such time as the court shall order, and before he shall be entitled to judgment, to offer to pay his just and equitable proportion of the tax, to be determined by himself; further providing that if the offer be accepted, the suit shall be dismissed; if not accepted, and the offer shall be found not equal to his just share of tax, judgment shall go against him for such just share; but if the offer be found equal to his just share of tax, he shall have judgment for costs.

It is quite obvious that there are some defects of detail in the provisions for judgment; but these might be readily corrected, and would not vitiate the section in cases where the judgment is provided for. But there are difficulties in the section which cannot be corrected.

Tender has no proper application to unliquidated damages. It may be that, in some cases, the legislature might authorize or require tender to cover unliquidated amounts. But the legislature cannot require a party aggrieved by an apparent tax proceeding, when no valid tax has been levied, to make a tender or offer, at his peril, of his just share of tax, as a condi-

tion of relief; to purchase his remedy against the oppression of a tax, where the groundwork on which the taxing power rests is wanting to support any tax.

It is the duty of persons subject to taxation to pay their just taxes when liquidated and levied; but they are not bound to tax themselves. It is the duty of the public to liquidate each person's just share of every tax, by constitutional exercise of the taxing power. And no statute can impose the burden upon a taxpayer of liquidating his own tax.

The section requires a party seeking relief against a tax where the groundwork is wanting, where in law no tax has been liquidated or levied, to guess at the amount which would have been his share of a valid tax, had one been liquidated and levied; or to make an assessment of his taxing district, and charge himself with his just share of tax, at his own peril; or be denied his remedy against the unconstitutional exercise of the taxing power. No such burden can be constitutionally laid upon him as a condition of his remedy, as the price of justice.

This is not said of cases of mere irregularity. It is said of taxes levied for unlawful purposes, which create no duty to pay; and of taxes apparently levied for lawful purposes, but not founded on constitutional assessment. In these cases there is in law no tax. "A tax, to be valid under the constitution, must proceed upon a regular, fair and equal assessment of the property to be taxed, made by the officers, in the manner, and with the securities and solemnities, provided by statute. These last the legislature may make and alter at pleasure; but no statute can dispense with assessment, or with its essential fairness and equality. For, without these, taxes cannot go upon a uniform rule. The uniformity of the rule may be broken, as well by inequality of assessment of values to be taxed, as by inequality of rule in the tax itself. And no tax upon property can be supported which does not proceed upon valid assessment, legally made upon uniform rule." *Marsh v. Supervisors, supra.*

The radical difficulty in the section appears to be an assumption of duty to pay tax before any tax has been lawfully and constitutionally laid.    In such cases, " the trouble is that there is no tax; therefore no apportionment of the party's share of a tax."    *Marsh v. Supervisors, supra.*

Another difficulty in the section, perhaps less formidable, is, that after a party makes his offer and it is not accepted, the duty of making an assessment of the taxing district is virtually devolved upon the court.    For that appears to be necessary in order to determine the sufficiency of the offer made.    But this need not be considered, because the objections already stated are fatal to the validity of the section.

Section 4 relates to actions for the recovery of money paid for taxes.    It provides that if, upon trial, the assessment upon which the taxes were levied is found to be void, the court shall not render judgment, but shall continue the action for a reasonable time, to permit a reässessment; and that judgment shall be entered for either party as the reässessment shall disclose whether or not the plaintiff had paid more than his just share of tax.

This section does not, like section 5, declare that the reässessment shall be conclusive.    But it gives no express right to the party to litigate, or express power to the court to inquire, whether or not the reässessment is justly and equally made under the uniform rule of the constitution.    Of course the reässessment may be as great a fraud upon the constitution and the law, as the original assessment.    And it is at least doubtful whether the court, under this section, would take power to inquire into the fact.    But the validity of such a provision will be more fully discussed in considering section 5.

The latter section provides that in all actions in which a party shall seek to avoid any assessment, tax or tax proceeding, if the court shall be of opinion that, for any reason affecting the groundwork of the tax, it should be avoided, it shall

stay proceedings until a reässessment can be had; and that such reässessment, when made, shall be conclusive evidence of the amount of tax justly chargeable to the party seeking to avoid the tax on his property, and to all other persons seeking to avoid it. There is some little obscurity in the language, but this appears to be the fair construction of the section.

There the section stops, except a proviso which is immaterial to the questions here. It was presumably intended that the reässessment should impose upon the party seeking relief against the tax, payment of his just share of tax, appearing by the reässessment, as a condition of relief. This indeed is not expressed. But taking the whole statute together, this might not be too strained a construction of it. And this construction will be assumed in considering the section, because otherwise the section would be inoperative for uncertainty.

Reässessments, upon failure of the first assessment, have been frequently upheld in this court. *Tallman v. Janesville,* 17 Wis., 71; *Cross v. Milwaukee,* 19 id., 509; *Dill v. Roberts,* 30 id., 178; *Whittaker v. Janesville,* 33 id., 76; *Marsh v. Supervisors, supra.* And indeed there never could have been grave doubt of their validity.

It has already been said that when a just and valid reässessment has been made, *pendente lite,* to avoid a tax upon the ground that the former assessment was invalid, it is competent for a statute to make payment of the just and liquidated amount of tax appearing by the reässessment a condition of judgment against the invalid tax. This is in accordance with well settled principles. *Warden v. Supervisors,* 14 Wis., 618; *Kellogg v. Oshkosh,* id., 623; *Myrick v. LaCrosse,* 17 Wis., 442; *Howes v. Racine,* 21 Wis., 514.

And, on the same principle, it is difficult to see why the legislature may not provide for a reässessment, *pendente lite,* to impose the same condition on a party seeking relief against a tax, upon the ground that there has been no valid assessment.

The objection made to this view is, that the reässessment delays the proceeding, and therefore violates the constitutional declaration that every person is entitled to a certain remedy in the law, promptly and without delay, conformably to the law. It is sufficient to say that the delay complained of may be essential to full justice, which may be authorized conformably to law; and that no one has a right to complain of the law's delay in enforcing his right, until his adversary's correlative right can also be enforced.

As already remarked, a reässessment may be open to the same objections as the first assessment. No one can be held to pay a tax which does not rest on a just and equal assessment, in compliance with the constitutional rule of uniformity. A reässessment must therefore be always open to the same impeachment as the original assessment.

And this is the difficulty with section 5. The statute not only makes it evidence, but conclusive evidence, of the tax chargeable against the party or his property. It might doubtless have been made competent evidence, as the original assessment was until impeached.

But it is no more within the legislative power to make the reässessment conclusive evidence of the tax, than to make the original assessment conclusive. Being conclusive evidence, it may well operate to make the payment of one tax wholly void, because not resting on the constitutional groundwork, a condition of relief against another.

The very able gentleman who argued this appeal for the appellants at the bar, for whose opinion the court entertains great deference, did not contend that the section, in this construction, could be upheld. He is quite too intelligent a lawyer to take such ground. But he endeavored, with great ability, to avoid the construction which has been given to the section. He argued that only reässessment in the manner specified in section 1, which might well be construed as meaning in the manner prescribed by law — that is to say, a just and

equal reässessment, complying with the constitutional rule of uniformity — is declared to be conclusive. It appears to the court that such would be a very forced construction, doing violence to the language of the section and to the manifest intent of the legislature. The section indeed directs the reässessment to be made in conformity with the constitution and laws. But quite independently of the manner of making the reässessment, it declares the actual reässessment made to be conclusive. Had the intention of the legislature been such as the learned counsel contends, the reässessment would have been declared evidence only, that is, *prima facie* evidence. If the reässessment should prove upon investigation to have been legally and constitutionally made, it would have been conclusive evidence *ex proprio vigore*. Conclusive evidence, in the sense in which the words are used in the section, imply a presumption of law which cannot be rebutted; precluding all inquiry how the reässessment was in fact made. And the words have no effect in the section, unless it be to make the reässessment, however made, an absolute and final determination of the tax chargeable to the party or his property.

Much of this discussion applies, though with less force, to section 4. The application can readily be made, without repetition here.

The argument of counsel was subtle, able and interesting And the court struggled to adopt it, in order to sustain the section; but the struggle was overborne by the language of the section and its manifest purpose.

Both section 4 and section 5 might be sustained, if they gave to the party the right to impeach the reässessment on the same grounds as the assessment, and provided for the process of conducting the inquiry. The latter might easily be done in suits in equity; it would be more difficult in actions at law. But as the sections stand, it would be difficult to support section 4, and is impossible to support section 5.

It is proper to say here that, though it might be possible to

import by construction into sections 4 and 5 the exception in section 3, of cases setting up the payment of tax or the exemption of property taxed, there is no exception, in any of the sections, of cases setting up illegality of the purpose for which a tax is levied. None of these cases could possibly require reässessment or payment as a condition of relief.

So far as these conclusions hold the statute before the court to be in conflict with the constitution, the court has come to them with great reluctance. It has borne in mind throughout this investigation, what it said of another statute in *Attorney General v. Eau Claire*, 37 Wis., 400: " We owe great deference to the legislative authority. It is our duty to give effect to all its enactments, according to its intention, as far as we have constitutional right and power. And to that end it behooves us, as far as we are able, to place such a construction on statutes as will reconcile them to the constitution; and to give them effective operation, under the constitution, according to the intention with which they are passed. It would be a palpable violation of judicial duty and propriety to seek in a statute a construction in conflict with the constitution or with the object of its enactment; or to admit such a construction, when the statute is fairly susceptible of another in accord with the constitution and the legislative intention. . . . But we cannot overlook our duty to the constitution, or enforce a statute which will not fairly bear a construction consistent with the safeguards of that paramount instrument, which binds both legislature and judiciary, and to which their powers and duties and ours are alike subordinate."

*By the Court.* — The judgment of the court below is affirmed.