T. B. SCOTT LUMBER COMPANY, Respondent, vs. ONEIDA COUNTY and another, Appellants.

*August 30 — September 18, 1888.*

*(1) Tax sales: Preliminary injunction, when granted.  (2) Common schools: Township system: Constitutional law.  (3, 4) Taxation: Review of action of county board ordering inspection of lands: Reports of inspectors: Board of review.*

1. A preliminary injunction to restrain the sale of land for taxes should not be granted or continued except where it is clear that it is necessary to protect the plaintiff's rights and to secure to him the benefit of the litigation if he is finally successful.

2. The law authorizing the township system of school government violates no principle of local self-government or of uniformity secured to the people or provided for in the constitution.  [Art. X, sec. 3.]

3. In an action to set aside a county tax levied to pay the expenses of an inspection of lands under sec. 1053, R. S., the court will not review the action of the county board in ordering the inspection or in fixing the compensation of the inspectors.

4. The reports of land inspectors appointed under sec. 1053, R. S., may properly be resorted to by the board of review, when acting upon the assessment rolls, as sources of information in regard to the value of lands.

APPEAL from the Circuit Court for *Oneida* County.

Action against the county of *Oneida* and its treasurer to set aside taxes and restrain the sale of lands for nonpayment thereof.   The facts are sufficiently stated in the opinion.

T. B. Scott Lumber Co. vs. Oneida County and another.

*Geo. G. Greene* and *L. J. Billings*, for the appellants.

*W. F. Bailey*, for the respondent, contended, among many other things, that the law authorizing the adoption of the township system of school government is unconstitutional. The schools under that system are not " district schools," within the meaning of sec. 3, art. X, Const.; nor, under the two systems, are the schools " as nearly uniform as practicable."

COLE, C. J. This is an appeal from an order refusing to dissolve an injunction restraining the defendant county or its treasurer from selling the plaintiff's lands, in the towns of Eagle River and Pelican in said county, for the delinquent taxes which were assessed upon them. The complaint contains many implications and general charges of fraud, irregularities, and violations of law, practiced and committed by the taxing officers in the assessment and levying of these taxes. These matters are relied on to show that the injunction was properly granted in the first instance, and that the circuit court was right in refusing to dissolve it on the coming in of the answer. The counsel for the county insists that the injunction should have been dissolved on the motion papers, irrespective of the facts in controversy, because it was unnecessary to protect the plaintiff's interests and operates to the great embarrassment of the county in the collection and management of its revenues.

It might be going too far to hold that a preliminary injunction to restrain the sale of land for taxes should not be granted or continued upon any state of facts which might be presented; but certainly such an injunction should only be granted in a very clear case, and where it is apparent that it is necessary to protect the plaintiff's rights. Where the facts are not in dispute, and it is manifest the plaintiff would be entitled to a permanent injunction on final decree, the court might possibly grant it and properly refuse a dis-

solution. "Where it appears that the *established principle* of taxation has been violated, and that *actual injustice will ensue*, or that the tax is levied for an unauthorized purpose, equity, in a proper case, will interfere to prevent the wrong," is the rule laid down in *Warden v. Fond du Lac Co.* 14 Wis. 618, and this was said on appeal from final judgment. *A fortiori*, a preliminary injunction ought not to be granted or continued in this class of cases, except where it is clear that it is essential and necessary to protect the plaintiff's rights and to secure to 1 im the benefit of the litigation if he is finally successful. We do not now recall any case where, on appeal from an order refusing to dissolve a preliminary injunction restraining the sale of lands for illegal taxes, any other rule has been laid down, put possibly such a case may exist, though counsel did not refer to any. It is evident, if the plaintiff sustains its contention on the hearing that the taxes in question are illegal and void for any reason, it will not be injured by the sale. A judgment annulling the tax will necessarily destroy the tax certificate and defeat any tax deed.

But if we consider the pleadings and the affidavits used on the motion we shall reach the same result, viz., that the injunction should have been dissolved. Any general discussion of the case upon the merits would be out of place at this time, and should be deferred until all the facts are before the court after proof taken. Some remarks seem to be called for on a few points which were fully discussed at the bar. And at the outset we observe that the answer fully and positively denies all the material allegations of the complaint upon which the plaintiff's equities rest. Moreover, the answer is supported by the affidavits of the officers whose official conduct is impeached or called in question. They deny all charges of fraud by intentionally omitting property from the tax roll or in discriminating against the plaintiff in the valuation of property for taxa-

tion.   As to the $3,000 highway tax levied in the town of
Eagle River in 1887, which it is claimed was illegal on the
ground (1) that it was never voted at a town meeting or
assessed by the supervisors, and (2) because it was in excess
of the amount the town was authorized to raise, the affi-
davit of the town clerk, Shefler, shows that it was in fact
voted by the electors at a town meeting, as stated in the
answer, and the answer alleges that Eagle River had a pop-
ulation of more than 500 inhabitants in the year 1887, when
this highway tax was voted.

Again, the complaint alleges that the $3,500 for school
taxes in Eagle River was void, because (1) it was founded
on the adoption by the town of the township system of
school government, and (2) that that system was not law-
fully adopted, or that there was no lawful organization
under that system.   We acknowledge our inability to see
any force or merit in this position.   The answer and affi-
davits clearly show that the township system of schools
was adopted by the legal voters of Eagle River, as au-
thorized by sec. 552, R. S.   That this system is not obnoxious
to any constitutional objection is to our minds a proposi-
tion too plain for argument.   The law authorizing the sys-
tem violates no principle of local self-government or of
uniformity secured to the people or provided for in the con-
stitution.   The township system provides a different mode
for regulating schools, forming districts, appointing officers
to care for school property, and for voting school taxes.
It relates purely to the management of our common
schools, and provides a different machinery for maintaining
them.   As we have said, we see no objection to the law.

A further claim is made in the complaint, that a county
tax of $12,000 or $15,000 levied by the county board to pay
orders allowed for inspecting lands was void.   This inspec-
tion was ordered by resolution of the board, under sec. 1053,
R. S.   It is said that the inspection was worthless, and was

undertaken to advance some unlawful scheme for the benefit of the inspectors. The answer denies that there was any unlawful scheme to be promoted, or that the inspection was intended to secure any corrupt or improper end or purpose. The statute gives the county board full authority to appoint inspectors of the land within the county, presumably to the end that the taxing officers may have information as to the situation, value, and condition of the different tracts, for the purposes of taxation. It appears from the answer that at the time the inspection was ordered the town of Eagle River contained a territory consisting of 30,000 forty-acre tracts, and had but few inhabitants. It was utterly impossible for an assessor to personally examine these lands and place a valuation on them for taxation. Hence the legislature saw fit to authorize this inspection to be made in the discretion of the county board. We must assume that the motives of the county board in directing it were laudable and honest. Certainly the court will not review their action, to determine whether in all respects they acted prudently or judiciously, nor will it inquire whether they paid the inspectors more than their services were really worth. These matters the court will not inquire into in this action.

In this connection we observe, in answer to an objection taken by plaintiff's counsel that the board of review resorted to and used the reports made by the inspectors when it acted upon the assessment rolls, that it was very proper the board should use these reports, for they would frequently furnish the most reliable and accurate information as to the condition and value of the lands assessed. The law required that each inspector should take and subscribe an oath and file it with the county clerk before proceeding to inspect the lands. He was then required to proceed and examine each and every forty-acre tract or other legal subdivision of a section within his district, and make a list and

T. B. Scott Lumber Co. vs. Oneida County and another.

description thereof in the prescribed form. To this list, when completed, he was required to attach his affidavit that he had personally examined, since his appointment as land inspector, each tract in the list, and that the description set opposite each tract was substantially a true description of the same, to the best of his knowledge and belief, and file the same with the county clerk. While the statute has not declared that these reports shall be *prima facie* evidence of the facts stated in them, we have no doubt it was intended they should be used by the taxing officers as proper sources of information in regard to the value of lands. We certainly think the board of review might use them when acting upon the assessment rolls.

That the board intentionally omitted property from the rolls which was liable to taxation, or arbitrarily changed valuations without any evidence, is positively denied in the answer and affidavits, as is the allegation that property was intentionally assessed by such board below its actual value. The charge made that the county tax is void because the county had already incurred an indebtedness in excess of the constitutional limit we think is not sustained by the facts shown. These remarks dispose of all the material points we deem it necessary to notice.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.