## MARSHALL vs. BENSON and another, imp.

*January 9 — March 9, 1880.*

TAX PROCEEDINGS: TAX DEED. (*1*) *Form of tax deed.* (*2*) *Presumption from deed as to date of sale.* (*3*) *When affidavit of a majority of assessors sufficient.* (*4*) *Affidavit construed.* (*5–8*) *Evidence as to rule of assessment.*

1. A tax deed executed under Tay. Stats., p. 437, § 166, or R. S. 1878, sec. 1178, is sufficient if in the form prescribed by the statute, though it fails to show the year for whose delinquent taxes the lands were sold; and such deed is *prima facie* proof of the grantee's title. R. S., sec. 1176.

2. As the statute directs sales of lands for delinquent taxes of one year to be made in May of the following year, and does not direct that for taxes of former years, the collection of which has been enjoined, the lands shall be sold at that time if released from the injunction, it must be *presumed* that a sale in May, 1874, as recited in the tax deed, was for delinquent taxes of the preceding year.

3. Where taxes are required by law to be assessed in a city by a board of assessors (one elected in each ward), an affidavit to the assessment roll, made by a majority of the board, is sufficient, in the absence of any express provision in the city charter taking the case out of the general rule of the statute. R. S. 1858, ch. 5, sec. 1; R. S. 1878, sec. 4971.

4. In such a case, the affidavit began: "I, N., assessor for the first ward, . . . do solemnly swear that the annexed assessment roll contains, as we verily believe, a complete and perfect list," etc., etc.; "that I have, as far as practicable, valued each parcel," etc.; and it continued thereafter to use the *singular* pronoun, but was signed by a majority of the assessors. The jurat was: "Read to the affiant, and subscribed and sworn to before me," etc. The blank used was one prepared by the secretary of state, adapted to towns, or municipalities having but *one* assessor. *Held,* that the verification was sufficient.

5. Where the question was as to the validity of a tax sale, evidence of the rule followed in assessing taxes for *other* years than that for whose taxes the sale was made, and of the *common report* as to the rule followed in the latter year, was inadmissible.

6. The view taken in *Plumer v. The Supervisors,* 46 Wis., 163, that sec. 12, ch. 334 of 1878 (providing that "no assessor shall be allowed, in any court or place, by his oath or testimony, to contradict or impeach any affidavit or certificate made or signed by him as such assessor "), is valid, adhered to.

7. Under such a statute, evidence of statements or admissions of the assessor

cannot be received to impeach his certificate, even if such evidence would be admissible independently of the statute.

8. Mere proof that, in an assessment of the property in a city for taxation, there was an undervaluation in a few cases, is not sufficient to show the whole assessment illegal.

APPEAL from the Circuit Court for *Fond du Lac* County.

Ejectment, to recover possession of a lot in the city of Fond du Lac. Complaint in the usual form. The defendants, *Benson* and *Smith,* answered separately, each claiming to be the owner in fee of an undivided one-half of the lot. A jury having been waived, the cause was tried by the court.

The plaintiff read in evidence various conveyances which he claims show title in him, derived from the United States. The defendants, to prove the allegations of their answer, read in evidence a tax deed of the lot to Mary J. Marshall, duly executed in 1877 by the proper officer, on a certificate of sale of the lot made in May, 1874, for nonpayment of taxes, and sundry mesne conveyances, from such grantee, of an undivided half thereof to each of the defendants, *Benson* and *Smith.*

The plaintiff read in evidence the assessor's affidavit to the assessment roll of the ward in which the lot is situated, for the year 1873, which bears the signature of three assessors, and an approval of such roll signed by four assessors. The affidavit commences as follows: " I, Harvey Durand, assessor for the first ward of Fond du Lac city, in said county, do solemnly swear," etc. The jurat is, " Read to the affiant and subscribed and sworn to before me," etc.

The plaintiff also offered to prove the rule of valuation of property for taxation by the assessors in certain years other than 1873; also, by the statements and admissions of the assessors and by common report, the rule of valuation acted upon by the assessors in 1873. The evidence was rejected.

The plaintiff proved that in a few instances property included in the assessment roll of 1873 was undervalued.

Thereafter the court filed its decision, whereby it found as

facts, (1) that said premises were not owned by the plaintiff when this action was begun; (2) that the defendants did not unlawfully withhold possession thereof from the plaintiff; and (3) that when this action was begun the defendants above named were, and ever since had been, the owners in fee simple, each of the undivided one-half of said premises, and in possession thereof. As a conclusion of law, the court held that the defendants were entitled to judgment against the plaintiff for costs.

From a judgment entered pursuant to such findings and conclusion, the plaintiff appealed.

For the appellant, there was a brief by *Shepard & Shepard*, and oral argument by *G. E. Sutherland*.

For the respondents, there was a brief by *Coleman & Spence*, and oral argument by *Mr. Spence*.

The following opinion was filed February 3, 1880.

LYON, J. It is claimed that the tax deed is void upon its face because it does not show the year in which the taxes were assessed, for the nonpayment of which the lot in controversy was sold and conveyed. It is a complete answer to that objection, to state that the deed is in the form then and now prescribed by statute. Tay. Stats., 437, § 166; R. S., 377, sec. 1178.

The tax deed, being regular on its face, and having been duly witnessed and acknowledged, is presumptive evidence of the regularity of all prior proceedings in respect to the taxation and sale of the lot. R. S., 377, sec. 1176. Its production, therefore, was *prima facie* proof of title in the grantee therein named; and the mesne conveyances from such grantee showed such title in the defendants *Benson* and *Smith*.

Had no attempt been made to impeach the tax deed, undoubtedly the findings of the court and the judgment would be correct. It is to be determined, whether the tax deed is successfully impeached. It must be presumed, we think, that

the lot in controversy was sold and conveyed for nonpayment of the taxes assessed against it in 1873. This presumption arises from the fact that the statute directs sales of lands for the delinquent taxes of one year to be made in May of the following year, and does not direct that for taxes of former years, the collection of which had been enjoined, the lands should be sold at that time, if released from the injunction.

1. The alleged defects in the affidavit annexed to the assessment roll of 1873 are, that it was signed by but three assessors, and sworn to by but one of them. It is understood that assessments in the city of Fond du Lac are made by a board consisting of one assessor from each of the five wards of the city. The rule of the statute is, that "all words purporting to give a joint authority to three or more public officers, or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it shall otherwise be expressly declared in the law giving the authority." R. S. 1858, ch. 5, sec. 1; R. S., 1145, sec. 4971. Our attention has not been called to any express provision in the charter of Fond du Lac which takes this case out of the general rule.

2. Conceding (but not holding) that but one assessor made an affidavit, this does not invalidate the tax deed. It is provided in section 2, ch. 334, Laws of 1878, that "no omission by any assessor to take or subscribe the oath required by law by him to be annexed to the assessment roll . . . shall invalidate or in anywise affect the validity of the assessment or tax." The effect of this provision is to render the signing and making of the affidavit by the assessor, which before was mandatory, merely directory. The power of the legislature to make the change was asserted in *Plumer v. The Supervisors*, 46 Wis., 163.

3. The rulings of the court, rejecting evidence of the rule of assessment in certain years other than 1873, and of the common report as to the rule acted upon by the assessors in 1873, were clearly correct. The question in issue related to the

assessment for that year and no other, and the rule upon which such assessment was made is not one of those facts that may be proved by common report.

We think, also, that the learned judge of the circuit court ruled correctly in rejecting evidence of the statements and admissions of the assessors in respect to the basis upon which they made the assessment in 1873. The act of 1878, chapter 334, sec. 12, provides that "no assessor shall be allowed in any court or place, by his oath or testimony, to contradict or impeach any affidavit or certificate made or signed by him as such assessor." In the opinion by the chief justice in *Plumer v. The Supervisors, supra,* we find this language concerning the section just quoted: "Section 12, in effect, disqualifies assessors as witnesses to impeach their own assessments. It was suggested that this was an unwise and oppressive provision. It is not for the court to determine that. It was clearly within legislative power, whether the discretion was wisely used or not. It puts an assessor in precisely the attitude in which the common law puts a juror. *Birchard v. Booth,* 4 Wis., 67. And this the legislature could surely do."

The learned counsel for the plaintiff claim that the language last above quoted is *obiter* in that case, and therefore not binding in this case, in which the question of the validity of the statute is directly involved; and they argue with great ingenuity that it was not competent for the legislature to impose such a disability upon assessors.

It is quite true that the validity of section 12 was not directly involved in that case; but other provisions of the same chapter, enacted in the same view — that is, to secure the collection of the public revenue, — were thus involved. We were compelled to hold certain of those provisions invalid. We were conscious that our judgment would seriously embarrass the state and its municipalities in collecting taxes already levied, and that remedial legislation on the subject would be absolutely necessary. We deemed it our duty, therefore, to consider and

pass upon all of the provisions of the act which were claimed
to be invalid, to the end that the legislature might be in pos-
session of the views of this court when it should proceed to
amend and correct the act.    Nearly, or quite, all of the fea-
tures of the act of 1878 which are applicable to this case, were
fully and ably argued in *Plumer v. Supervisors*, and the de-
cision was the result of very careful deliberation by this court.
It is not, therefore, quite accurate to say that the opinion of
the court on the provisions of the act here involved is mere
*obiter*.    At the same time, it may be conceded that it is not
*stare decisis*.    The grounds upon which the provisions under
consideration were held valid are sufficiently indicated in the
opinion by the chief justice, and further discussion of the ques-
tion here would be profitless.    It is sufficient to say that we
adhere to our former views.    An additional reason for doing
so may be found in the fact that the legislature has embodied
those views in certain amendments to the act of 1878, enacted
in the following year.    Laws of 1879, ch. 255.

We conclude that the provisions of sections 2 and 12 of the
act of 1878, above quoted, are valid laws.

4. If the assessor may not by his oath or testimony impeach
his affidavit or certificate as such assessor, it seems clear that
the same cannot be impeached by showing the unsworn state-
ment of the assessor that his affidavit or certificate is false.
To allow this would be to allow a thing to be done indirectly
which cannot lawfully be done directly.    We cannot think
the legislature intended any such result when it enacted sec-
tion 12.

Another objection to the rejected testimony may be plausi-
bly urged, independently of the act of 1878.    The fact sought
to be proved was, that the valuation of property for taxation
in 1873 was made upon an unauthorized basis or rule.    It is
very questionable whether proof of the unsworn statement of
an assessor can, under the general rule of evidence which ex-
cludes hearsay testimony, be received to establish that fact.

Strike out section 12, and we should still hesitate long before giving our sanction to the admission of such testimony.

5. Applying the principles above stated, the only testimony remaining in the case tending to show that the assessment of 1873 was made upon an illegal basis, is the testimony that in a very few cases the assessors undervalued property. There is no legal and competent proof that such undervaluation was intentionally made, pursuant to a vicious rule of valuation adopted and acted upon by the assessors. It may have been the result of a mere error of judgment, and if so it does not invalidate the assessment. We think the testimony entirely insufficient to establish the proposition that the assessment was illegal.

6. In making proof of his title, the plaintiff showed a chain of conveyances of lands which include the lots in controversy, from the United States to James Duane Doty. The conveyances are not inserted in or annexed to the bill of exceptions, but it appears that in the conveyance to Governor Doty he is described as president and trustee of the Fond du Lac Company. The plaintiff also read in evidence the record of a declaration of trust in respect to lands including this lot, executed by Doty to the stockholders of that company, which bears even date with the conveyance to Doty, January 19, 1836. The next instrument offered was the record of a conveyance of the same land by Samuel Ryan, president of the Fond du Lac Company, to the grantor of the plaintiff. No conveyance by Doty was proved, and there was no evidence that Ryan was the president of the company when he executed the conveyance above mentioned.

Although we have not the above instruments before us, we assume that Doty took his conveyance in trust for the company. The Fond du Lac Company was duly incorporated by an act of the territorial legislature, approved February 9, 1842. Laws of 1842, p. 12. The effect of certain provisions in that act seems to be to vest in the company the legal title to the

lands theretofore held in trust for it. Before the passage of that act the articles of association of the company provided that the president should convey lands held by him in trust for the company, when directed to do so by its board of directors; and the act confirms all conveyances so made. The act also authorizes the corporation to make by-laws, rules and regulations for the conveyance of its estate, both real and personal, and confirms all conveyances executed pursuant thereto. The record does not state the date of the conveyance executed by Ryan, and we have no means of knowing whether it was executed before or after the act of 1842 was passed. But in either case, if Doty held the land in trust for the company, and Ryan was president of the company, and conveyed the land pursuant to the direction of the proper board, or in accordance with the by-laws of the company, he conveyed a good title.

It is unnecessary in the present position of the case to pass definitely upon the plaintiff's title as it stood before the execution of the tax deed, and we shall not do so. But should the plaintiff elect to take a new trial under the statute (R. S., sec. 3092), we suggest to his counsel that it will be the safer course to show that Ryan had proper authority to execute the conveyance.

*By the Court.* — The judgment of the circuit court is affirmed.

The following additional opinion was filed March 9, 1880:

LYON, J. In the opinion prepared by me and recently filed in this cause, the question whether more than one assessor verified the assessment roll was not passed upon, but the roll was held valid even though verified by but one assessor. It was so held because of section 2, ch. 334, Laws of 1878, and an affirmation in *Plumer v. The Supervisors*, of the right of the legislature to make the requirement for an affidavit to the

assessment roll directory merely; but it was strangely over-looked that we held that the section left the requirement man-datory.

Section 2 passed into the Revised Statutes as section 1164 b, and by that designation was repealed by section 4, ch. 255 of 1879. The blunder in the opinion (for which the writer alone is responsible), in regarding the requirement that the assessors shall verify the assessment roll in the manner prescribed by statute as directory merely, renders it necessary to determine whether the roll in the present case was properly verified. If it was, the result is the same, and the judgment first an-nounced must stand. We are all of the opinion that the roll was properly verified, and were of that opinion when the cause was decided.

The commencement of the affidavit, " I, Harvey Durand, Assessor of the First Ward," etc., is not very significant. It is matter of form, and its insertion in the affidavit may readily be accounted for in view of the facts that the form of assess-ment blanks is prescribed, and the blanks are furnished, by the secretary of state, and the form here used is the one adapted to each town or municipality having but one assessor, and was undoubtedly furnished by the secretary. The mate-rial fact is, that a majority of the board of assessors signed the affidavit, and the jurat, although in the singular — " read to the affiant," etc. — is applicable to each of the signers. Be-sides, we must presume (nothing insuperable appearing to the contrary) that the assessors signing the affidavit complied with the law by swearing to it — there being a jurat, which makes the presumption admissible.

For these reasons, notwithstanding the error in the former opinion, we think the cause was correctly decided.