Scheiber vs. Kaehler and another.

, Scheiber vs. Kaehler and another.

*April 20 — May 11, 1880.*

Tax Deeds. *(1) Form of signature. (2) Execution and acknowledgment by deputy clerk. (3-5) Description of the premises: Certainty.*
Tax Proceedings. *(6) Reässessment. (7, 8) Verification of assessment roll. (9) Clerical error in return of town treasurer. (10) Failure to collect tax on land out of owner's personal property.*
Reversal of Judgment: *(10) On question of fact.*

1. A tax deed is not invalidated by the fact that the county clerk has described himself, in his signature thereto, as "clerk of the board of supervisors" (ch. 131 of 1871); nor by the fact that the name of the county is not mentioned in such signature, where it is correctly stated in the attesting clause — "I, A. B., clerk of the board of supervisors of the county of N., have executed," etc.

2. A tax deed purporting to be executed by "A. B., clerk of the county board of supervisors of N. county," was signed "A. B., clerk of the board of supervisors, *by C. D., deputy;*" and the certificate of acknowledgment states that "C. D., deputy clerk," etc., personally came before the notary, and acknowledged that the instrument was executed freely, etc. *Held,* sufficient. *Huey v. Van Wie,* 23 Wis., 613.

3. The description of the land in a tax deed was: "the west half of the northwest quarter, and the grist and saw mills, except therefrom five acres, being west of Cedar creek, in section ten, town ten north, of range twenty-one east, containing seventy-five acres." *Held,* that the deed is not void for uncertainty, but is good for all the land lying east of Cedar creek in the half-quarter section described; the only uncertainty (if any) relating to the *exception;* and *it seems* that in the absence of evidence to the contrary, it must be held that the five acres are described as west of the creek, and the other seventy-five acres as east thereof.

4. A description of the land conveyed in a deed as bounded by the land of a third person, does not render the deed uncertain on its face.

5. A description of the land conveyed in a deed as " one quarter-acre in the

south half of the northeast quarter, bounded north, west and south by N.'s land, east by mill-dam and Cedar creek, section 9 in township 10 of range 21 east, containing 25-100 acres of land," *held* sufficient on its face.

6. Where the whole amount of a tax assessed in one year upon an entire tract of land, upon the valuation of such entire tract, remains uncollected, and is reässessed upon a *portion* of such tract in a subsequent year (there being no new valuation), such subsequent reässessment is void.

7. *It seems* that the omission of a town assessor to state, in his affidavit verifying the assessment roll, in 1870, that such roll contained "the name of each stockholder and the amount of his stock in each incorporated bank in said town," would not be fatal if it were shown that there was no incorporated bank in the town.

8. But the omission of such affidavit to state that each valuation of property therein "is the full value which could ordinarily be obtained," etc., as required by the statute, is fatal to the assessment and subsequent tax proceedings. *Plumer v. Supervisors*, 46 Wis., 163, and other like cases in this court.

9. The return of the town treasurer omitted the word "not" from the form "that I have, upon diligent inquiry, not been able to discover any goods and chattels," etc. *Held*, obviously an unintentional omission by clerical error, and immaterial.

10. If a tax deed can be avoided by showing that the taxes might have been collected out of the personal property of the owner of the land, in whose name it was assessed (a point not decided), still the finding of the judge of the court below, upon uncertain and conflicting evidence, that the taxes could not have been so collected, is conclusive upon this court.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is thus stated by Mr. Justice TAYLOR: " This was an action of ejectment, to recover possession of three tracts of land. The first tract described in the complaint is five and three-quarters acres of land in the northwest corner of the west half of the southwest quarter of section ten; the second tract is described as all the west half of the northwest quarter of section ten, except five acres of land lying on the west side of Cedar creek; and the third tract, as one-quarter acre of land lying and being in the south half of the northeast quarter of section number nine, and bounded on the north, on the

west and on the south by land owned by one H. Krohn, and on the east by Cedar creek and the mill dam thereon.

"Upon the trial, the plaintiff, in order to prove his title to said tracts of land, introduced in evidence four tax deeds issued by the county of Ozaukee to parties from whom the plaintiff derives his title. The first tax deed offered in evidence was issued to one Joachim Saehn, as grantee, bearing date the 31st of January, 1872. This deed is executed by 'Joseph Albrecht, clerk of the board of supervisors, by Gustav Gotze, deputy.' The description of the lands conveyed by said deed is as follows: 'The west half of the northwest quarter, and grist and saw mills, except therefrom five acres, being west of Cedar creek, in section number ten, town number ten north, of range number twenty-one east, containing 75 acres.' The deed also recites that the land was sold for the nonpayment of taxes, by the proper county officer, on the 8th day of May, 1866. This deed was recorded in the office of the register of deeds for the county of Ozaukee, on the 31st day of January, 1872.

"The second tax deed was issued to Joachim Saehn, bears date November 3, 1871, and was executed by 'Joseph Albrecht, clerk of the county board of supervisors.' This deed was also recorded in the proper office on the 31st day of January, 1872. The description of the lands conveyed by this deed is as follows: 'Five three-fourths acres in the northwest corner, west half southwest quarter, bounded north by quarter line, west by section line of section nine (9) and ten (10), and southeast by Corrigan's land, section ten (10), town ten (10) north, range twenty-one (21) east, five three-fourths acres.' It also recites that the lands were sold for nonpayment of taxes May 8, 1866.

"The third deed was issued to Frederick Kaehler; bears date February 25, 1873; was executed by 'John C. Schroeling, clerk of the county board of supervisors;' and was recorded in the proper office the 26th day of February, 1873. The land

conveyed by the deed is described as follows : ' One-quarter acre ($\frac{1}{4}$) in the south half of northeast quarter, bounded north, west and south by H. Krohn's land, east by mill dam and Cedar creek, section No. 9 in township No. 10 of range No. 21 east, containing 25–100 acres of land;' and the deed also recites that the lands were sold for nonpayment of taxes on the 11th day of May, 1869.

" The fourth deed was issued to Frederick Kaehler; bears date October 20, 1874; was executed by ' John C. Schroeling, county clerk;' and was recorded December 14, 1874. The lands conveyed by this deed are described as follows : First, there is a description of a quarter-acre of land, which is admitted to be a misdescription, and the, plaintiffs do not claim to derive any title to the quarter-acre of land described in the complaint under this deed. The second description is as follows: ' Also the west half (W. $\frac{1}{2}$) of northwest quarter (N. W. $\frac{1}{4}$) of section ten (10) in town ten (10) north, of range twenty-one (21) east, including the grist and saw mill thereon situated, and excepting therefrom three (3) acres west of said Cedar creek; and also two (2) acres east of said grist mill and the race in front of mill, containing seventy-five acres.' The third description is as follows: ' Also the northwest corner of the west half (W. $\frac{1}{2}$) of the southwest quarter (S. W. $\frac{1}{4}$) of said section ten (10) north, of range twenty-one (21) east, being bounded north by the quarter-section line, west by section line dividing sections nine (9) and ten (10), and on the south and east by Pat. Corrigan's land, and containing five acres.' The deed also recites that the lands were sold for nonpayment of taxes, May 9, 1871.

" The plaintiff introduced conveyances from the grantees in said tax deeds, showing that·any title to the lands described therein, which vested in such grantees, was conveyed to and vested in him.

" The defendants admitted that they were in possession of the lands described in the. complaint at the time the action

was commenced and at the time of the trial; and, after giving some evidence as to the value of the use of the premises, the plaintiff rested. The defendants moved for a nonsuit, which was denied, and the defendants duly excepted; and thereupon the defendants introduced certain records of the county of Ozaukee relating to the assessment and sale of the lands for taxes, as mentioned in said tax deeds, and gave some evidence tending to show that the persons owning said lands at the time the taxes were levied, and during the time the warrants for the collection of the same were in the hands of the proper town treasurers, had personal property out of which said town treasurers might have collected said taxes. The case was tried by the court without a jury, and the court found in favor of the plaintiff for all the lands described in the complaint. Exceptions to the findings of fact and conclusions of law were duly made and taken by the defendants, and they appealed from a judgment rendered in favor of the plaintiff."

*Eugene S. Turner,* for appellants.

For the respondent there were briefs by *Cotzhausen, Sylvester & Scheiber,* and oral argument by *Mr. Cotzhausen.*

TAYLOR, J. The learned counsel for the appellants, in a very exhaustive and elaborate brief, has assigned and argued a great number of exceptions taken on the trial to the validity of the tax deeds upon which the plaintiff bases his title. Most of the exceptions are taken to the formality of the deeds, and relate to matters appearing upon the face of the deeds themselves. After a careful consideration of these exceptions, we are constrained to hold that none of them are well taken. The deeds are strictly in the form prescribed by statute, except as to the signatures. The exception that the county clerk has signed the deeds as " clerk of the board of supervisors " instead of " county clerk " is cured by the statute changing the designation of this office from clerk of the board of supervisors to " county clerk." See Laws of 1871, ch. 131, sec. 1. There

is no force in the objection that the clerk does not designate himself as clerk of the board of supervisors of Ozaukee county. It is recited in the attesting clause of the deeds, that " I, Joseph Albrecht, the clerk of the county board of supervisors of the county of Ozaukee, have executed," etc. The signature following this, " Joseph Albrecht, clerk of the county board of supervisors," sufficiently indicates that he is the clerk of the county board of supervisors of the county of Ozaukee. That the first deed, which was executed by the deputy clerk, was properly acknowledged, is settled by the decision of this court in *Huey v. Van Wie,* 23 Wis., 613.

The exception that the first tax deed offered in evidence is void because of the uncertainty of the description, we think, is not well taken. As was said by the learned counsel for the respondent, if there is any uncertainty in the description, it relates to that part of the land lying west of Cedar creek, and it is certainly good for all the land lying east of the creek and in the tract described in the deed; and we are inclined to hold that, in the absence of evidence to the contrary, it must be held that just five acres of the tract were west of the creek, and seventy-five acres east thereof. The evidence introduced by the defendant shows that the first tax deed above described was issued upon a sale of the seventy-five acres of land for the alleged nonpayment of taxes levied and assessed in 1864, which were returned for that year as uncollected, and reässessed upon the lands in 1865, and not then paid. The taxes on this land, which were levied and assessed strictly as taxes for 1865, were fully paid before sale. It is urged that this reässessment of the taxes of 1864, in the year 1865, upon the seventy-five acres, and the sale of the seventy-five acres for such reässessed tax, is void. The records introduced in evidence show that in 1864 the west half of the northwest quarter of said section 10, containing eighty acres, without any exception or reservation therefrom, was assessed as a whole at the sum of $4,360. This is shown by the assessment roll of

1864, and also by the tax roll of that year, the only difference between the two being that the assessment roll, as equalized, puts the valuation of the eighty acres at $4,360, and the tax roll has it $4,320. The evidence also shows that all the taxes assessed on the whole eighty acres in 1864 were paid, except the town taxes assessed thereon, and the tax roll shows that the town taxes assessed upon the whole of said eighty acres in 1864, and which were not paid, were $116.18, and no more.

The town treasurer, in his return of the unpaid taxes levied and assessed in 1864, made in 1865, states that there remains unpaid on the west half of the northwest quarter, and grist mill and saw mill, less land lying north of Cedar creek, of said eighty, section 10, town 10, $121.99. This return was supposed to be imperfect or illegal, and the land was not sold at the tax sale in 1865. The records then show that in 1865 this sum of $121.99 was charged, not against the whole eighty acres against which it was charged in 1864, but against seventy-five acres, being a part of said eighty acres, lying east of Cedar creek; and the five acres lying west of said creek, and upon which it was also charged in 1864, are not charged with any part of the same. We should, probably, upon the evidence in this record, be compelled to hold that the increase of the tax of 1864 from $116.18, to $121.99 in 1865, was made up of legal interest or charges upon such unpaid taxes; but we are unable to find any reason or authority for charging a tax which in 1864 was, so far as this record shows, chargeable to the eighty acres of land, to seventy-five acres of the same tract in 1865. It is clear from the evidence that in 1864 the town tax of $116.18 was not apportioned to or charged upon the seventy-five acres, but was apportioned to and charged upon the eighty acres. If, without any reason shown or assigned therefor, this tax can, in the next year, be all charged to a part of said eighty acres, or to seventy-five acres thereof, then there does not seem to be any reason why

the whole may not be so charged to forty acres, or any other fractional part thereof.

We cannot, upon the evidence in this record, presume that the taxes upon the five acres not included in the reässessment of 1865 were paid in 1864. The receipt of the town treasurer and the tax roll of 1864 both negative any such presumption. In order to hold this reässessment of 1865 valid, we should be compelled to hold that a tax levied, assessed and apportioned upon a valuation of an entire tract in one year may, without giving any reason therefor, be lawfully reässessed and levied upon a fractional part of such tract the next or some succeeding year. The seventy-five acres were not valued at $4,360. In 1864 the eighty acres were valued at that sum, and the town taxes of 1864, in the town of Cedarburg, were apportioned to the eighty acres upon such valuation. In the absence of testimony showing the contrary, we cannot presume that the five acres excluded in 1865 were of no value, and that therefore no harm is done the owner of the seventy-five acres by charging him with the whole tax apportioned to the valuation of the eighty acres. If the whole amount of the tax levied, assessed and apportioned in one year upon an entire tract of land, and upon the valuation of such entire tract, remains uncollected, and be levied and reässessed upon a portion of such tract in a subsequent year, such subsequent reässessment and levy must be held void. We hold, therefore, that the plaintiff acquired no title to the seventy-five acres of land described in his complaint, under his first deed.

The fourth tax deed purports also to convey this same tract. As we have said above, this deed is sufficiently formal. It is alleged by the learned counsel for the appellants that this deed is void, for the reason that the assessor, in making his assessment in 1870, upon which assessment the taxes were apportioned and the land sold for the nonpayment thereof in 1871, and such tax deed issued upon such sale, did not verify such assessment under oath, as required by the statute. The oath

Scheiber vs. Kaehler and another.

of the assessor verifying his assessment omits entirely to state that such assessment roll contains " the name of each stockholder, and the amount of his stock, in each incorporated bank in said town;" and " that each valuation of property made by him is the full value which could ordinarily be obtained for the same at private sale, and which we believe the owner, if he desired to sell, would accept in full payment thereof."

It is probable the first omission would not vitiate the tax proceedings, if it were shown by the evidence that there was no incorporated bank in the town, as it would be simply absurd to compel an assessor to swear that the roll contained the name of each stockholder and the amount of his stock in each incorporated bank in the town when there was in fact no such bank in the town; but the omission of the other provision, as to the manner in which he had valued the property, is material, and was expressly made material by Laws of 1868, ch. 130, sec. 27. The provisions of the statute in regard to the valuation of real property previous to the passage of ch. 130, Laws of 1868, are found in sec. 12, ch. 167, Laws of 1859, as amended by subd. 6, sec. 1, ch. 295, Laws of 1860, and are as follows: " Each parcel of real property shall be valued at its true value in money, excluding the valuable crops which may be growing thereon; but the price at which such real property would sell at auction or at a forced sale, shall not be taken as a criterion of such true value." Under this provision for the valuation of real property the assessor was required to verify the assessment roll in the manner following: " I, ———, assessor for the ———, in the county of ———, do solemnly swear that the return to which this is attached contains a correct description of each parcel of real property within said ———, as far as I have been able to ascertain the same, and that the value attached to each parcel in said return is, as I verily believe, the true value thereof."

Previous to the revision of 1858, assessors were not required to verify their assessment under oath, but were required to at-

tach thereto a certificate signed by them. See sec. 36, ch. 18, R. S. 1858. This provision was repealed by the legislature of 1858, and the assessor was required to verify his assessment under oath, substantially as required by section 12, ch. 167, Laws of 1859. See section 16, ch. 115, Laws of 1858. The law of 1859, as amended by chapter 295, Laws of 1860, remained in force so far as the verification of the assessment and the valuation of real property were concerned, until the enactment of chapter 130, Laws of 1868. This chapter was a general revision of the laws of the state relating to the assessment and valuation of property for taxation. In this act the legislature expressly provide "that real property shall be valued by the assessor from actual view, at the full value which could ordinarily be obtained therefor at private sale, and which the assessor shall believe the owner, if he desires to sell, would accept in full payment" (section 16, ch. 130, Laws of 1868; Tay. Stats., 400, § 31); and the same law which established this peculiar rule for valuing real property for the purposes of taxation, requires the assessor to verify his assessment under oath, and, among other things, requires him to swear "that each valuation of property made by him is the full value which could ordinarily be obtained for the same at private sale, and which he believes the owner, if he desired to sell, would accept in full payment thereof."

These enactments clearly indicate that the legislature intended to make this rule for the valuation of real property obligatory upon the assessors, and to enforce its observance by compelling them to make oath, in returning their assessments, that they had observed and followed such rule. The statute was intended to aid in making valuations of property for taxation equal, and as a consequence the distribution of the burdens of taxation equal. It is very questionable whether the intention of the legislature has been accomplished, but there can be no doubt as to such intention, and no doubt that such law was intended to be obligatory. Nor can there be any

doubt that a violation of this law on the part of the assessor renders the subsequent tax proceedings void in law. Without looking for authority upon this question in other states or countries, it is sufficient that this court has repeatedly held that the omission of the assessor to make the oath required by law vitiates the subsequent tax proceedings. *Marsh v. Supervisors*, 42 Wis., 502, 517; *Philleo v. Hiles*, id., 527; *Cotzhausen v. Kaehler*, id., 332; *Iverslie v. Spaulding*, 32 Wis., 394; *Jarvis v. Silliman*, 21 Wis., 600; *Matteson v. Rosendale*, 37 Wis., 254; *Plumer v. Supervisors*, 46 Wis., 163, 177; *Marshall v. Benson*, 48 Wis., 558.

These cases set the question at rest in this state that the neglect of the assessor to verify his return as to a material matter, required by the statute, avoids all the tax proceedings founded upon such assessment, including the sale and tax deed issued thereon. It is insisted by the learned counsel for the respondent, that this defect is cured by the provisions of section 1164b, R. S. 1878. It is a sufficient answer to this proposition to say that this court decided that this section did not cure such irregularity. See *Plumer v. Supervisors* and *Marshall v. Benson*, *supra*. And since such decisions the legislature has repealed the section. See section 4, ch. 225, Laws of 1879. It follows from what has been said, that the fourth tax deed introduced in evidence was void, and that the plaintiff failed to show any title in himself to the seventy-five acres of land described in his complaint.

The second tax deed, conveying the five and three-fourths acres of land to the plaintiff's grantor, is in all respects formal; and we see no force in the objection that the description is so uncertain that nothing can pass by it. It is bounded on the north and west by fixed lines, designated in the deed, and on the southeast by lands of one Corrigan. There is nothing on the face of the deed which shows that the land cannot be located. If the evidence showed that there were no lands of Corrigan in the vicinity of this tract of five and three-fourths

acres, then such evidence might show the deed void; but if the proofs showed that Corrigan did own lands to the southeast of this tract in the northwest corner of the west half of the southwest quarter of said section 9, and which so bounded this tract in the corner as to leave but the five and three-fourths acres, or a tract of something near that area, and did not own the five and three-fourths acres in the corner, then the tract would be properly located, and there would be no difficulty in defining its boundaries.    It is not an uncommon thing, in conveyances of real estate, to describe and locate the tract as bounded on one or more sides by lands owned by some other person, and such conveyances are not held void for that reason.

The objection that the tax of 1864, which was reässessed in 1865, was excessive, does not appear from the evidence.    The increase might lawfully be made by the addition of interest or lawful charges.    The objection that the description in the third tax deed, which purports to convey the one-fourth acre of land, is uncertain and void, is not well taken, for the reason above stated.    The quarter-acre is bounded on the north, west and south by lands owned by H. Krohn, and on the east by the mill dam and Cedar creek, and is described as being in the south half of the northeast quarter of section 9, etc.    On the face of the deed this is a good description.    In the absence of evidence to the contrary, we are to presume that there is a quarter of an acre of land in the S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of said section, bounded north, west and south by Krohn's land, and east by the creek and mill dam.    It is not an uncertain description, unless it should appear upon investigation that Krohn did not have any land in that south half of the northeast quarter, which bounded a quarter-acre not owned by him, on the north, west and south, and which was bounded east by the creek and dam; but if, upon investigation, a quarter-acre should be found so bounded, and not owned by Krohn, then the quarter-acre would be located, and the description made perfect.

The only other objections to the validity of these deeds, urged by the learned counsel for the appellants, are —

*First*. That the evidence shows that the owner of these lands, in whose name they were assessed and taxed, had in his possession personal property out of which the taxes could have been collected by the town treasurer whilst he held the warrant for the collection of the same, and that it was unlawful for such treasurer, therefore, to return the tax on said land as delinquent. Upon this point the evidence is not conclusive; and if it were admitted that the return of the treasurer is not conclusive upon this point (a question we do not decide), and that a tax deed could be avoided by showing that the taxes might have been collected out of the personal property of the person owning the lands, and in whose name the same were taxed, and if that were a material question in the case, still we must hold that, the learned circuit judge having found that the evidence did not sufficiently show that there was any such personal property out of which such taxes could have been collected, his decision upon that question of fact, upon such uncertain and conflicting evidence, is conclusive.

*Second*. That the treasurer's return was informal and void. The only difficulty with the return is, that it is said that the word "not" is omitted where it ought to have been inserted. If the word was in fact omitted from the original return, which is not entirely certain, its omission is so evidently a clerical error that we should still hold the return good. The return, taken as a whole, clearly shows that it was intended to conform to the statute, and that the omission of this word was a mere accident, and not intentional. With this word omitted it makes the treasurer say, " that I have, upon diligent inquiry, been able to discover any goods and chattels belonging to the persons charged with such unpaid taxes, whereon I could levy the same," which is nonsense; but, with the word "not" inserted after the words " I have," it is sensible, and in compliance with the law. *Morrison v. Austin*, 14 Wis., 601. In this case the

late chief justice says: "The word 'the,' in the affidavit of no answer, and the word 'receive,' in the judgment, appear at a glance to have been inserted by a mere slip of the pen — the one for the word 'no,' and the other for the word 'recover;' and this is so obvious that no person, in the least accustomed to the perusal of such papers, could for a moment be misled, or hesitate at all at the real intention of the writer. They are such mistakes as the court could at any time have corrected, and as must have been disregarded in every stage of the action." So in this case, any one having any knowledge of what the treasurer's return should state, could not be misled by the omission of the word "not" as to the intention of the treasurer, and would at once come to the conclusion that the omission was accidental and not intentional. The return should be read as though the word "not" appeared in its proper place.

We think the evidence shows that the plaintiff had title to the five and three-fourths acres, and to the fourth of an acre, by virtue of the tax deeds offered in evidence, and that he failed to show title to the seventy-five acres described in his complaint. The judgment should have been in favor of the defendants as to the seventy-five acres described in the complaint, and in favor of the plaintiff for the five and three-fourths acres and the one-fourth acre.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with instructions to the circuit court to render judgment in accordance with this opinion.